BRACKEN v. DAHLE et al.

No. 4339. Decided October 11, 1926. Remitted upon Stipulation October 23, 1926. (251 P. 16.)

488

*Booth, Lee, Badger, Rich & Rich,* of Salt Lake City, for appellants.

*Van Dam & Draper* and *Dan B. Shields,* all of Salt Lake City, for respondent Bracken.

*Cheney, Jensen, Marineau & Stephens,* of Salt Lake City, for respondent American Surety Co. of New York.

*Stewart, Alexander & Budge,* of Salt Lake City, for respondent Strike.

490

THURMAN, J.

In October, 1923, F. A. Dahle anl Val W. Palmer, as partners under the firm name of Dahle Construction Company, entered into a written contract with the state of Nevada, by

its department of highways, to construct a highway between Pioche and Caliente, in the county of Lincoln, in said state, and by the terms of said contract said partnership covenanted and agreed, at its own cost and expense, to do all the work and furnish all the material necessary in the construction of said highway for the consideration expressed in said contract. Said contract, together with the specifications made a part thereof, is very voluminous. We will not undertake to quote it either literally or in substance, but will refer to such provisions thereof as may become necessary in the course of this opinion.

On January 5, 1924, said partnership entered into a contract in writing by which it sublet a portion of said work to plaintiff herein and his partner, L. N. Strike, operating at that time under the firm name of Strike & Bracken. This contract will be referred to hereinafter as Exhibit A, and the contract between the Dahle Construction Company and the state of Nevada will be referred to as Exhibit B. Exhibit A reads as follows:

"This agreement hereinafter referred to as 'agreement,' made and entered into this 5th day of January, 1924, between F. A. Dahle Construction Company, of the state of Utah, first party, and L. N. Strike and Harry L. Bracken, copartners, of Salt Lake City, Utah, second parties, witnesseth: That whereas, the first party did on or about the 2nd day of October, 1923, enter into a certain contract with the state of Nevada by the Department of Highways thereof as first party and said first party herein as second party, hereinafter referred to as 'contract,' which said contract is known as Contract No. 84, State Highway, Federal Aid Project No. 85, and provides for the constructing of a portion of a highway in the County of Lincoln, between Caliente and Pioche, known as Route 7, Section C, which said contract, together with the plans and specifications referred to in said contract, are hereby referred to and by reference incorporated and made a part of this agreement, as hereinafter more particularly stated; and whereas, the said first party desires to employ the second party to do and perform all work required by said contract in the receiving of materials for said highway at the pits and in hauling and transporting and in rough spreading the same on the grade of said highway as required under said contract, it is therefore hereby agreed:

"I. That said contract between first party hereto and said State of Nevada, dated on or about October 2, 1923, is hereby made the agreement between the parties hereto as far as the same may be applicable to the work which the said second parties hereto agree to perform. The said second parties hereby agree to be bound by the terms and conditions of said contract as far as the same applied to the second party in said contract of October 2, 1923, as the same relate to the work of the second parties hereto under this agreement, and the said first party herein agrees to be bound by the terms and agreement of said contract, as far as the same are applicable to the doing of said work .herein provided to be done, except as to the terms of said contract are hereinafter modified by this agreement, and said first party herein is hereby expressly given all the rights and privileges under this agreement which the State of Nevada has under said contract.

"II. Said first party hereby employs said second parties and said second parties agree to perform all the work of receiving all material for said highway at the pits as said material is provided by said first party and to haul and transport the same and rough spread the same on the grade of said highway in accordance with the terms and conditions of said contract of October 2, 1923, except as the same is herein modified, with such changes and substitutions as may be necessary to give to the said first party herein the rights and privileges of said first party in said contract.

"III. Said second parties agree to furnish a surety bond in the sum of Five Thousand ($5,000.00) dollars in the same terms, with proper substitutions, as set forth on page 44 of said contract with said State of Nevada.

"IV. Said second parties agree to furnish six (6) five (5) yard trucks in first class condition on said job for the performance of the work herein provided to be done; work to commence with four (4) such trucks at once and not later than the 11th day of January, 1924, and additional trucks up to said six (6) to be furnished by second parties as material requiring such additional trucks is supplied by first party. Said second parties agree to complete all work required of them on or before May 1, 1924. Said second parties agree they will constantly give their personal attention to said work and will not sublet or assign the whole, or any part thereof.

"V. Said first party will pay said second parties 32½ cents per yard mile for all material hauled, except material hauled upgrade between stations one thousand and thirteen hundred thirty, for which said upgrade work second parties shall be paid an additional

5 cents per yard mile for all said material hauled up grade; but for all materials hauled downgrade between said stations thirteen hundred thirty and one thousand five said second parties shall be paid 32½ cents only per yard mile. The direction of which said materials shall be hauled shall be absolutely within the control of said first party. Said second parties herein shall be paid on all work done at the time payment is made under said contract with the State of Nevada to said first party for said work, on estimates as provided in said contract; said first party, however, shall retain 15 per cent of the amount of said payments on said estimates until the final payment as provided in said contract.

"VI. Final payment shall be made five (5) days after the execution of the certificate of the state engineer and its approval by the department of highways as set forth in said contract of October 2, 1923, as to said work herein provided to be done by said second parties.

"VII. In case work shall not progress satisfactorily said first party shall have all the rights of the State of Nevada under said contract of October 2, 1923, for the speeding up or completion of said work, as far as said second parties are concerned, and the time for the giving of any notice under this agreement shall be one-half the length of time provided for in said contract of October 2, 1923.

"VIII. Said second parties hereto assume all liability for damage, loss, or injury to any third party, or to the workmen immediately under their supervision, and agree to furnish all bonds necessary to insure the performance of their duty in said particulars and to hold first party harmless therefor, to the same extent as though second parties hereto were the second party of the said contract of October 2, 1923.

"IX. It is understood and agreed that there shall be no more than five (5) pits from which materials shall be hauled and that, in case additional pits are determined upon by the State of Nevada, the second parties hereto shall be required to haul from such additional pits, but that payment for hauling of material from such additional pits shall be apportioned between the parties hereto in the same ratio as the payment made by the State of Nevada for hauling from said additional pits shall stand to the payment agreed to be made from the five (5) pits contemplated under the present agreement; that is, 32½ cents stands to 40 cents.

"In witness whereof the parties to these presents have hereto set their hands the year and date first above written. F. A. Dahle Construction Co., by F. A. Dahle, First Party. Harry L. Bracken, L. N. Strike, Second Parties."

It is alleged in the complaint that on or about February 24, 1924, the copartnership between Strike and Bracken was by mutual consent dissolved; Bracken receiving all the assets thereof and assuming all the partnership liabilities. Bracken alone sues as plaintiff, but Strike was made a party by interpleader, as was also the American Surety Company that insured performance of the contract.

The plaintiff alleges in his complaint that he and his predecessor in interest (Strike & Bracken) have done and performed all things required of them by said contract, except as they have been prevented from performance thereof by the acts and omissions of the defendant, and that they have been ready, able, and willing, at all times since said contract was entered into, to fully perform and carry out all the terms thereof to be by them done and performed.

Plaintiff further alleges in substance that the quantity of gravel to be hauled by him and his predecessor in interest (Strike & Bracken) was 74,680 yard miles, and when rough spread by them, as provided in said contract, it would amount to approximately 35,000 cubic yards. Plaintiff also alleges the commencement of said work by plaintiff on or about the 11th day of January, 1924, with four 5-yard trucks and that plaintiff was able, ready, and willing to furnish two other trucks when the work required it; that plaintiff and his said predecessor in interest have hauled and spread all of the material furnished by defendant which on the 1st day of May, 1924, amounted in quantity to approximately 20,-777.70 yard miles or 8,700 cubic yards of material; that the defendant failed, refused, and neglected to furnish plaintiff and his predecessor in interest any more than the said 20,-777.70 yard miles of gravel, and thereby prevented plaintiff and his predecessor in interest from hauling and spreading all of the material required by said contracts prior to the 1st day of May, 1924, as provided in said contract Exhibit A, and thereby caused the plaintiff and his said predecessor in interest to wait in idleness to their loss, costs, and expense, to plaintiff's damage in the sum of $10,000, for which sum

plaintiff prays judgment. Defendant filed both a general and special demurrer to the complaint, which were overruled.

For a second cause of action plaintiff prays for $4,625.53, as balance due for work actually done in hauling 20,777.70 yard miles of gravel and rough spreading the same on the highway referred to in the contract. Defendant, answering, refers to Exhibits A and B, and makes them a part of its answer. Defendant denies that plaintiff, or Strike & Bracken have done and performed all things required of them by said contract, or that they have been prevented from performing the same by the defendant, or that the plaintiff, or Strike & Bracken, have been ready, willing, or able to carry out the terms of said contract. Defendant alleges that Strike and Bracken have breached said contract by refusing to be bound thereby and by wrongfully and unlawfully on or about the 1st day of May, 1924, removing from operation the trucks they had agreed to furnish on said work, and denies that Exhibit A either alone or when construed with Exhibit B provides for the hauling or rough spreading of any gravel in any way or in any manner by plaintiff, or by Strike & Bracken.

Defendant also alleges that by the terms of Exhibit B defendant had the right to suspend operation upon said work on account of weather conditions, poor material, or other conditions beyond his control, and alleges that said operations were suspended during the period of said contract for the aforesaid reasons. Defendant denies it refused to furnish gravel ·as alleged, and alleges that it did furnish such gravel until plaintiff and his predecessor in interest wrongfully and unlawfully ceased operations on May 1, 1924, denies that plaintiff was damaged in any amount, or at all, and denies every allegation of the complaint except as otherwise qualified or admitted in the answer.

Answering plaintiff's second cause of action, defendant admits that plaintiff, and his predecessors in interest, hauled certain amounts of gravel for defendant, but alleges they have

been fully paid therefor and that nothing is due thereon. Other allegations not admitted or qualified are denied.

Defendant filed a counterclaim, in which it prays for the sum of $15,000 damages on account of the failure of plaintiff and Strike to complete said work under the contract Exhibit A, and also prays for an order interpleading Strike and the American Surety Company, plaintiff's surety under the contract. An order of interpleader was made accordingly.

It is unnecessary here to set out in detail the allegations of the counterclaim. It is sufficient to say in this connection that defendant alleges performance of the contract on its part and failure of plaintiff on his part to perform, by reason of which defendant was compelled at great expense to enter upon and do the work.

The case was tried to the court without a jury. The court found no cause of action against either of the parties on defendant's counterclaim, but found in favor of plaintiff on his first cause of action in the sum of $4,190, and upon the second cause of action $1,810.26. Judgment was entered on the findings, and defendant appeals.

Defendant assigns 33 errors of the court in the admission and rejection of evidence, but discusses only one in its brief. The other errors, 24 in number, charge error in the findings, and in the overruling of defendant's motion for a nonsuit, its motion for a new trial, and that the judgment is against law.

The errors assigned and relied on by appellant will be considered in the order presented in appellant's brief.

The point most vigorously stressed arises upon assignment of error No. 57. Under that assignment it is urged by appellant that the defendant had all the rights and privileges under the contract Exhibit A that the state of Nevada had under the contract Exhibit B, and that as the state of Nevada could not have been sued for damages by the Dahle Construction Company, both by virtue of law and by the express provisions of Exhibit B; that, therefore,

defendant could not be sued by the plaintiff in the case at bar.

In addition to the well-recognized rule that a state cannot be sued without its consent, appellant also relies on the following provisions found in Exhibit B:

"The state of Nevada, the department of highways, and the directors of engineers will not be responsible for any delay in delivery of materials, but the state will endeavor to have all materials delivered promptly in so far as it lies within its own control."

Appellant relies on paragraph 1 of the covenants and agreements in Exhibit A, hereinbefore quoted, which, for convenience, we will again quote in this connection:

"That said contract between first party hereto and said state of Nevada, dated on or about October 2, 1923, is hereby made the agreement between the parties hereto as far as the same may be applicable to the work which the said second parties hereto agree to perform. The said second parties hereby agree to be bound by the terms and conditions of said contract as far as the same applies to the second party in said contract of October 2, 1923, as the same relate to the work of the second parties hereto under this agreement, and the said first party herein agrees to be bound by the terms and agreement of said contract, as far as the same are applicable to the doing of said work herein provided to be done, except as the terms of said contract are hereinafter modified by this agreement, and said first party herein is hereby expressly given all the rights and privileges under this agreement which the state of Nevada has under said contract."

Whatever might have been the rule, had plaintiff expressly and unequivocally agreed that he would not sue the defendant for damages for delay in furnishing material, need not be determined here. Whether defendant is immune from suit in the present action depends upon a fair and reasonable interpretation of the language above quoted, upon which appellant relies.

It will be noted that in the language last quoted it is expressly stated that the second party (plaintiff here) —

"agrees to be bound by the terms and conditions of said contract (Exhibit B) as far as the same applied to second party in said con-

tract (Dahle Construction Company) *as the same relate to the work of the second parties hereto* (the plaintiff) *under this agreement."* (Italics supplied.)

It will be further noted that the first party in Exhibit A is also bound by a similar provision immediately following the words which for convenience we have underscored. Appellant in argument refers only to the last clause of the paragraph, which reads:

"And the said first party herein is hereby expressly given all the rights and privileges under this agreement which the state of Nevada has under said contract."

There would be more force in appellant's contention if plaintiff had unqualifiedly agreed to be bound by the provisions of the passage last quoted, but the whole paragraph must be construed together in order to ascertain the intention of the parties. It is going a long way to assume that plaintiff intentionally and deliberately waived the ordinary and usual remedy to which a party is entitled for the redress of a wrong. Such waiver should at least be expressed in the most unequivocal terms. If the language used is equivocal, it certainly ought not to be interpreted in favor of the party insisting upon the waiver. The right to apply to the courts for relief for the perpetration of a wrong is a substantial right. If there is any doubt as to the meaning of the language employed, the doubt should be resolved in favor of the party claiming the right. We are of opinion that the plaintiff in the instant case sufficiently safeguarded the right in question when he stipulated in the paragraph above quoted from Exhibit A to be bound by the provisions of Exhibit B, in so far as such provisions relate to the work to be performed, and that he did not intend to waive his right to apply to the courts for a redress of wrongs. The last clause of the paragraph upon which appellant relies may well apply to the following paragraph found in Exhibit B:

"It shall be discretionary with the engineer to extend the time

allowed for completing the work as given in the contract because of delays occasioned by causes entirely beyond the control of the contractor, and the judgment and decision of the engineer therein shall be final and conclusive. Extension of time shall be granted in writing only, and only upon the written application of the contractor."

Many other rights and privileges are reserved by the state of Nevada and the department of highways in Exhibit B relating to the performance of the work. These, in our opinion, are the matters to which the last clause of paragraph 1 of Exhibit A refer, and as to such matters there is no contention on the part of plaintiff, or his predecessor in interest, that they are not bound thereby. Appellant cites many authorities which it claims support its contention under this assignment, but, in view of the grounds upon which we base our conclusion, such authorities have no application.

Before further considering the errors relied on, it is necessary to make brief reference to one or more of the findings of the court. Finding No. 4 is to the effect that Exhibit B required the hauling of 68,789.85 yard miles of gravel to be furnished by defendant and received by plaintiff and rough spread on the highway; that said work as provided in Exhibit A was to be completed on or before May 1, 1924; that plaintiff ever since January 11, 1924, had four 5-yard trucks constantly at work and ready for work for hauling and spreading said materials, as required, and was ready, willing, and able to furnish two additional trucks as specified in said contract whenever the same should be needed; that plaintiff and his predecessor in interest hauled and spread up to and including May 1, 1924, 20,777.70 yard miles of said material; that defendant failed, neglected and refused to furnish any more than 20,777.70 yard miles of gravel, and thereby prevented plaintiff or his predecessor from hauling and spreading all the material as provided in said contract prior to May 1, 1924. Finding No. 5 is to the effect that plaintiff and his predecessor in interest (Strike & Bracken) did all things required of them by said contracts Exhibits A and B up to May 1, 1924; that they were ready, able, and

willing to complete said work, but were prevented by the failure of defendant to furnish said material. Finding No. 6 is, in substance, as follows: That defendant was under obligation by said contracts to furnish sufficient gravel to plaintiff to complete said contract by May 1, 1924; that there were some delays on account of storms, but that defendant at no time between January 11 and May 1, 1924, suspended operations under said contract; that plaintiff furnished four trucks only on said work, but the trucks he furnished were not supplied with sufficient gravel to keep them reasonably busy during good weather; that on account of such failure to furnish plaintiff sufficient gravel to keep said trucks reasonably busy or to complete said work by May 1, 1924, defendant thereby breached said contract and plaintiff withdrew all of said trucks and ceased to haul any gravel after said last-mentioned date. Finding No. 7 reads as follows:

"That plaintiff furnished trucks in sufficient number and in proper condition to haul and spread all of the gravel furnished by said defendant; that plaintiff actually hauled during said period to May 1, 1924, 20,777.70 yard miles of gravel, and without additional equipment and within said period could and would have hauled 25,970 yard miles more at an additional expense of $4,250; and that plaintiff was therefore damaged by reason of the breach of the contract on the part of said defendant in the sum of $4,190."

Without entering upon a review of the evidence, it is sufficient to say the foregoing findings were supported by substantial evidence. Further reference to finding No. 7 will be made before concluding the opinion.

This is an action at law and we have no power to review the evidence for the purpose of determining its weight.

Appellant's next contention is that appellant "never agreed to furnish plaintiff any amount of gravel whatsoever."

While the contract Exhibit A does not in express terms require defendant to furnish any specific amount of gravel to be hauled and rough spread by plaintiff, the contract Ex-

hibit B, which is made a part of Exhibit A, as far as relates to the doing of the work, specifically binds the defendant to do all the work and furnish all the material for the construction of said highway; the estimated quantity being 74,680 yard miles. The hauling and rough spreading of the gravel was sublet to the plaintiff and his partner, Strike, and to contend that defendant was not required to furnish the materials is, to say the least, a mere ingenious quibble. There is no merit in the contention.

It is also contended by appellant that time was not of the essence of the agreement, and especially as it was not so stipulated in the contract. Many authorities are cited which it is claimed support this contention.

It is somewhat difficult to see what this question has to do with the case in hand. If we understand the meaning of the findings to which reference has been made, the plaintiff was not allowed damages by way of profits on the entire contract, but, calling attention especially to finding No. 7, plaintiff was allowed, first, the balance due him for gravel he had already hauled and spread, and, second, damages for what he might have hauled and spread without additional equipment prior to May 1, 1924, if the material had been furnished him as provided in the contract; in other words, actual damages sustained by him by being on the ground ready for work with sufficient equipment during all of said period of time. This being the situation the question of time being, or not being, of the essence of the contract, is not involved. If defendant breached the contract by not furnishing material, plaintiff had the right to cease work and was entitled to such damages as he had sustained up to the time he ceased work. The authorities relied on by appellant are not applicable to the situation.

Appellant makes the further contention that the measure of damages applied by the court is unauthorized, and proceeds to discuss the question upon the theory that the court

allowed damages by way of profits upon the entire contract. We do not understand that such was the measure of damages applied by the court, and again call specific attention to finding No. 7, which we have quoted at length. If the court had awarded plaintiff damages by way of profits on the entire job, including what he might have earned, had he continued on after May 1, 1924, the contention made by appellant and the authorities cited by counsel in support thereof might be entitled to serious consideration. But, as before stated, such was not the case. The only damages awarded by the court for breach of the contract were in the nature of actual damages for the time he was there on the job with men and equipment on the ground ready for work. The entire job, as found by the court, was 68,789.85 yard miles. Plaintiff actually hauled and spread 20,777.70 yard miles for which he was allowed a certain sum as for balance due and owing. For breach of the contract in failing to keep plaintiff supplied with gravel prior to the 1st of May, 1924, the court allowed such sum as under the evidence in the case plaintiff might have earned, less cost and expense, while there waiting with his men and trucks ready for work. It estimated the quantity plaintiff would have hauled and spread prior to May 1, 1924, as 25,970 yard miles. This converted into dollars and cents at the contract price gives the gross earnings from which the court deducted $4,250 as the expense plaintiff would have incurred in hauling and spreading that quantity of gravel. The court had before it the number of days plaintiff could have worked prior to May 1, 1924. It had before it the number of men and trucks and what had been earned per day by each. The basis for determination of what might have been done, had the gravel been furnished according to the contract, was as well supported as can ordinarily be found in cases of this nature. Under this head appellant's counsel say they have attempted to understand how the court found $4,190 due plaintiff on the first cause of action. This, of course, is a mere matter of mathe-

matical determination by multiplying 25,970 yard miles by 32½ cents per yard mile and deducting therefrom $4,250, which the court found would be the cost of hauling and spreading that quantity of material. But appellant likewise expresses wonder at where the court found the sum of $4,-250 as the cost. Appellant admits in its brief that plaintiff testified that it would cost him the additional sum of $4,250 to complete the entire job. Inasmuch as the court charged that sum against the plaintiff as the estimated cost for hauling and rough spreading only 25,970 yard miles, it would seem that appellant has but meagre grounds for complaint. When plaintiff quit work there was approximately 48,000 yard miles of gravel remaining to be hauled and spread. If it would have cost plaintiff only $4,250 to finish the contract, the wonder ought to be why the court charged against him the same amount as costs for hauling and rough spreading only 25,970 yard miles. Whatever may have been the basis of the court's calculation, it is manifest appellant was not prejudiced thereby.

The next contention is that in any event plaintiff would only be entitled to one-half of the amount the lower court allowed for breach of the contract. This contention is made because two of the men operating trucks were to be paid 32½ cents per yard mile, the full amount plaintiff was to receive under the contract Exhibit A. The evidence is quite conclusive that such was the agreement between plaintiff and the two men referred to. There is also evidence that these men informed plaintiff while the delay was going on because of defendant's failure to furnish gravel that they would expect to be made whole for their loss of time occasioned by the delay. There was no assignment of their claims to plaintiff, but there is a question of liability on the part of the plaintiff which this court cannot determine in this proceeding. In any event, it appears to be a matter entirely between plaintiff and the parties referred to, and not a matter which concerns the appellant.

Appellant assigns as error the admission in evidence of certain documents marked as Plaintiff's Exhibits E, F, G, and H. Val W. Palmer, one of the partners of the Dahle Construction Company, and a defendant in this action, was sworn as a witness for plaintiff. Palmer was bookkeeper, timekeeper, and cashier of defendant partnership. He testified that one J. A. Glock was state inspector on that job. He inspected the gravel, determined its proper sizes, recorded the number of truck loads hauled, and indicated where the gravel should be dumped. Palmer produced certain records used by this partnership in checking the state's estimates, and was asked by the plaintiff if the records produced were accurate copies of the original, and, over objection, answered they were. The objection was that it was secondary evidence. The witness presumed the originals were in Carson City, Nev., in the files of the highway commission, but did not know. For aught he knew they might be in Utah. Witness was then asked to state from the record the amount of gravel hauled by Strike & Bracken while they were on the job. This was objected to for the same reason. The objection was overruled. Witness then gave the amount as 20,777.70 yard miles. Witness finally stated that it was his understanding as a partner in the Dahle Construction Company that the partnership settled with the state of Nevada on the basis of Exhibits E, F, and G. If the defendant, Dahle Construction Company, settled with the state of Nevada on the basis of 20,777.70 yard miles of gravel hauled and spread by Strike & Bracken, as admitted by the witness, who was a member of the defendant partnership and a defendant himself, the evidence was in the nature of an admission that the number of yard miles shown by Exhibits E, F, and G, was correct, and, as held by the trial court, the rule excluding secondary evidence had no application. The court did not err in admitting the evidence.

Appellant also assigns as error that plaintiff's second cause of action was premature. It appears from the record that the action was commenced in May, 1924. Plaintiff's

amended complaint was not filed until in June next following. The contract Exhibit A provides that final payment on said contract shall be made five days after the execution of the certificate of the state engineer and its approval by the department of highways of the state of Nevada. The court found that settlement between defendant and the state of Nevada was made December 14, 1924, and that the obligation from defendant to plaintiff became due on December 19th of the same year. It appears from the record, however, that a supplemental complaint was filed by plaintiff in January, 1925, covering plaintiff's second cause of action praying judgment for the amount therein claimed. There was no error in awarding judgment on plaintiff's second cause of action. 8 Words and Phrases, 6799.

It is also contended that there were delays encountered on account of storms which extended the time of performance, and also because plaintiff undertook to set up and operate a gravel plant in order to furnish gravel. The court found adversely to appellant on both of these contentions and the findings are sustained by substantial evidence.

It is finally contended that plaintiff's entire case is based on the conclusions of witnesses and the absence of facts. In considering this assignment it suffices to say that every material finding of the court is based upon substantial evidence entirely independent of opinion evidence or conclusions of witnesses. The reporter will cite the cases relied on by the parties. We have not included them in the body of the opinion for the reasons therein stated.

We have considered all the questions argued by appellant and find no error in the record.

The judgment is affirmed, at appellant's cost.

GIDEON, C. J., and FRICK and CHERRY, JJ., concur.

STRAUP, J., dissents.