# PETERSEN v. OGDEN UNION RAILWAY & DEPOT CO.

No. 6956.   Decided December 23, 1946.   (175 P. 2d 744.)

See 39 C. J., Master and Servant, sec. 436; 35 Am. Jur..834. Validity of contractual provisions limiting place or courts in which action may be brought, notes, 59 A. L. R. 1445; 107 A. L. R. 1060.

*Rawlings, Wallace & Black,* of Salt Lake City, for appellant.

*H. B. Thompson, Bryan P. Leverich, A. U. Miner* and *M. J. Bronson,* all of Salt Lake City, for respondent.

WOLFE, Justice.

Petersen, plaintiff below, appeals from a judgment of the District Court in and for Weber County dismissing his complaint against the Depot Company.

Plaintiff brought this action under the Federal Employer's Liability Act, Title 45 U. S. C. A. § 51 et seq.; to recover judgment for personal injuries sustained in the course of his employment by the Depot Company.

Before the trial of the case on its merits the trial court on motion of the defendant dismissed the action. The basis of the dismissal was the fact that prior to the commencement of the suit and subsequent to the injury the parties entered into the following written agreement:

"Agreement and Contract"

"Received of the Ogden Union Railway and Depot Company, Five Hundred Dollars ($500.00), being an amount advanced to me on account of personal injuries sustained by me while employed as a Carman Helper, at or near Ogden, Utah, December 9, 1944, while in the service of the said Ogden Union Railway and Depot Company, such payment not being an admission of liability and to be deducted from any final settlement, which might be made."

"It is agreed that as consideration for such payment, in the event settlement cannot be concluded, suit for damages which I fully understand, might in the absence of this agreement, be brought in jurisdictions other than those herein set forth, will not be brought in any jurisdiction outside of the District Court of the United States, Northern Division."

"I have read the above agreement and contract and fully understand the same."

Sgn. Cassady Petersen<br>Ogden, Utah<br>May 11, 1945"

The trial court held that the agreement was binding on the plaintiff and by reason of said agreement plaintiff may not maintain this suit in any other court than the District Court of the United States, for the District of Utah, Northern Division.

Plaintiff contends that the agreement is null, void and invalid as being contrary and in conflict with the provisions of Section 5 and 6, of the Federal Employers' Liability Act.

The applicable parts of Sections 5 and 6 of the Act read as follows:

"Section 5 Contract, rule, regulation, or device exempting from liability;  *  *  *

"Any contract, rule, regulation or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter [Section 51-60 of Title 45 U. S. C. A.] shall to that extent be void;  *  *  *

"Section 6  *  *  *  concurrent jurisdiction of courts; removal of case in State court  *  *  *

"Under this chapter, [Sections 51-60 of Title 45, U. S. C. A.], an action may be brought in the district court of the United States, in the district of the residence of the defendant, or in which the cause of action arose, or in which the defendant shall be doing business at the time of commencing such action. The jurisdiction of the courts of the United States under this chapter shall be concurrent with that of the courts of the several States, and no case arising under this chapter and brought in any State court of competent jurisdiction shall be removed to any court of the United States."

Is the liableness to a judicial pronouncement of liability in any of the courts enumerated in Section 6 itself a "liability" as the word is used in Section 5 of the Federal Employers' Liability Act?

It is apparent that Congress by the use of the very broad terms of Section 5 intended to protect fully the rights given employees by the Chapter. The section says "any" device whatsoever the purpose or intent of which shall be to enable the carrier to exempt itself from "any" liability created by the chapter shall to that extent be void.

The Supreme Court of the United States in *Duncan* v. *Thompson*, Jan. 1942, 315 U. S. 1, 62 S. Ct. 422, 86 L. Ed. 575, held the section applied to contracts made after the cause of action arose as well as those made before. Regardless of the intention of the parties, if the practical effect of the contract or device is to exempt the carrier from any liability imposed by the chapter, the contract or device is void. *Philadelphia, B. & W. R. Co.* v. *Schubert*, 224 U. S. 603, 32 S. Ct. 589, 56 L. Ed. 911; *McAdow* v. *Kansas City Western R. Co.*, 100 Kan. 309, 164 P. 177, L. R. A. 1917E, 539; *Larson* v. *Lewis-Simas-Jones Co.*, 29 Cal. App. 2d 83, 84 P. 2d 296.

Ordinarily venue statutes are for the convenience of the parties. They are to restrict the suit to those courts which

because of their geographic location are readily accessible to the parties with the minimum expense and the minimum expenditure of time on the part of the parties and their witnesses. However, even ordinary venue statutes have an important effect on the outcome of cases. Theoretically the same evidence presented in the same way in each of several courts, state or federal, should result in like verdicts. And if the verdict were for the plaintiff, the damages should theoretically be substantially the same amount. But, as a practical matter, the number of jurors required, the rules of procedure, the manner of selecting jurors, the geographic location of the court and other circumstances materially influence the trial of cases.

It is reasonable to assume that a legislature when it enacts a venue statute ordinarily does not consider all the details—number and selection of jurors, etc.—of the advantages or disadvantages a particular court may offer plaintiffs or defendants. The legislature probably usually considers only the convenience of the parties and the time and expense phases of the problem.

However it is apparent that Congress, when enacting the venue provision here involved, must have intended it to cover more than the convenience and time and expense of the parties. Among other things it expressly provided that

"No case arising under this chapter and brought in any State court of competent jurisdiction shall be removed to any court of the United States."

That clause was not prompted by mere considerations of convenience or time or expense of litigation. There is no material difference as far as expense of litigation, time required for suit or convenience of parties and witnesses between a suit in a federal court and the same suit in a state court. Congress in prohibiting removal to federal courts of cases started in state courts must have considered at least some of the practical advantages that accrue to plaintiffs in state courts because they are state courts and not merely because of their geographical location, and, desiring

to secure those practical benefits to the employees, prohibited removal to a federal court.

This conclusion is supported by the opinion in *Miles* v. *Illinois Central Railroad Co.*, 315 U. S. 698, 62 S. Ct. 827, 830, 86 L. Ed. 1129, 146 A. L. R. 1104, where the Supreme Court of the United States said:

"In the legislative history of section 6, the provision that removal may not be had from a 'State court of competent jurisdiction' was added to the House bill on the floor of the Senate and later accepted by the House, in order to assure a hearing to the employee in a state court. Words were simultaneously adopted recognizing the jurisdiction of the state courts by providing that the federal jurisdiction should be concurrent."

Section 6 makes available to the plaintiff several courts in which he may bring the action. Clearly that section gives the employee substantial benefits. It was not only for his convenience and to enable him to choose a court where the expense of litigation would not be prohibitive, but it was to give him the right to select the court in which he considers it would be most advantageous for him to bring his action.

In *Sherman* v. *Pere Marquette Ry. Co.*, D. C., Oct. 1945, 62 F. Supp. 590, 592, the employee agreed not to sue the defendant carrier except in either the state courts or the local federal court. The opinion in that case reads in part:

"The Federal Employers' Liability Act creates certain rights in employees of common carriers by railroad while engaged in interstate commerce. Some of those rights are substantive and some are adjective. The act also imposes certain duties or liabilities on such common carriers, and some of those duties or liabilities are substantive and some of them are adjective. One of the rights which the act granted to employees of common carriers by railroad while engaged in interstate commerce was the right to bring an action for a violation of the act 'in the district * * * in which the defendant shall be doing business at the time of commencing such action.' One of the duties or liabilities imposed on common carriers by a railroad while engaging in interstate commerce was the duty or liability of submitting to suits for a violation of the act 'in the district * * * in which the defen-

dant shall be doing business at the time of commencing such action.' This right and this corelative duty or liability are of course an adjective right and an adjective duty or liability. It cannot be denied that the contracts in question in this case have the purpose or intent to enable the common carrier to exempt itself from the liability to submit to suit for a violation of the Federal Employers' Liability Act 'in the district * * * in which (it) shall be doing business at the time of commencing such action.' The narrow question is then, are such contracts denounced by Section 5 of the Federal Employers' Liability Act? The act, including Sections 5 and 6, is remedial. * * *

"The comprehensive phraseology of Section 5 certainly includes within its meaning a contract the purpose or intent of which is to enable the common carrier to exempt itself from liability to suit for a violation of the act 'in the district * * * in which the defendant shall be doing business at the time of commencing such action.' The beneficial effects of the statute should not be whittled away by the courts by distinguishing between adjective and substantive rights and adjective and substantive duties or liabilities. Adjective rights and their corelative duties or liabilities are frequently as important as substantive rights, and substantive rights and their corelative duties or liabilities are of little value without adjective rights and their corelative duties or liabilities whereby the substantive rights may be enforced. * * * Generally speaking, venue is a privilege which may be waived, but it may not be contracted away in the face of a specific statute which prohibits such contracting, as does Section 5 of the Employers' Liability Act under consideration."

We think that what the court said in the Sherman case, quoted above, in reference to a contract that attempted to keep the employee from suing in certain federal courts applies to the contract in this case which attempts to keep the employee from bringing his suit in a state court.

The practical effect of the contract in this case is probably to decrease the likelihood of the defendant's having to pay damages to the plaintiff. The contract confines plaintiff to the federal court. In the State Courts of Utah the plaintiff need convince only six out of eight jurors to be successful in his suit. In the federal court he must convince twelve out of twelve. Obviously the hurdles in recovery are greater in the federal court, and therefore, there is less likelihood that the defendant will have to pay damages if the case is tried there.

The defendant contends that the plaintiff exercised his right to choose the court in which to bring his action by entering into the contract and, inasmuch as the plaintiff had the right to choose and exercised that right by choosing the federal court, Sections 5 and 6 of the Act are not contravened by the contract.

The spirit and the letter of the Act require that an injured employee be left free and uninfluenced by the carrier in selecting the court in which to bring his action. The liableness to judicial pronouncement of liability in any of the courts enumerated in Section 6 of the Federal Employees' Liability Act is itself a "liability" as that word is used in Section 5 of the Act. Hence so much of the contract as attempts to limit the courts in which plaintiff may bring his suit is void under Section 5 and should not be enforced.

It is apparent that our decision in this case does not accord with decisions of several sister states and some lower federal courts on practically the same question. See *Detwiler* v. *Lowden et al.*, 1936, 198 Minn. 185, 269 N. W. 367, 838 107 A. L. R. 1054, 1059; *Detwiler* v. *Chicago, R. I. P. R. Co. et al.*, D. C., 15 F. Supp. 541; *Clark* v. *Lowden et al.*, D. C., Dec. 1942, 48 F. Supp. 261; *Herrington* v. *Thompson et al.*, June 1945, 61 F. Supp. 903; *Roland* v. *Atchison, Topeka & Santa Fe Ry. Co.*, D. C., April 1946, 65 F. Supp. 630. We do not agree with the reasoning of those cases and, as they are not binding on us, do not follow them. As far as we have been able to ascertain, the Supreme Court of the United States which must be the final arbiter has not yet specifically decided the question. While the facts were somewhat different than in the instant case, we think the reasoning in the case of *Duncan* v. *Thompson*, supra, is applicable to the case at bar and tends to support our decision. We do not consider the opinion in *Philadelphia, Baltimore & Washington Railroad Co.* v. *Schubert*, 1912, 224 U. S. 603, 32 S. Ct. 589, 56 L. Ed. 911 which says Section 1 of the Federal Employers' Liability Act creates liability on carriers decides the question of whether or not Section 6 of the Act

also creates liabilities within the meaning of "liability" as used in Section 5 of the Act. Section 6 of the Act was not involved in the Schubert case.

The case is remanded to the district court with instructions to vacate its order of dismissal. Costs to appellant.

McDONOUGH, and WADE, JJ., concur.

LARSON, Chief Justice (concurring in result).

I concur in the result arrived at by Mr. Justice WOLFE, but by an entirely different process.

The prevailing opinion chooses to follow the rule of interpretation stated in *Sherman* v. *Pere Marquette Ry.*, D. C., 62 F. Supp. 590, although it seems to concede the weight of authority is the other way. While I think the right result is attained by Mr. Justice WOLFE, I do not arrive at that conclusion by the same reasoning. To begin with, I do not believe that Congress ever enacted legislation designed to invite litigants to "shop around" the courts to see which was having bargain day. Nor do I believe that either litigants or the public should be invited to take that view of either the courts or the administration of justice. The whole reasoning of the opinion is that the word "liability" as used in Sec. 5 of the Federal Employers' Liability Act has a meaning different from its usual legal connotation although there is no glossary or other definition to the term in the Act. The reasoning is that since by Section 6 the employee is permitted to bring his suit ofttimes in any one of many courts in several jurisdictions, the word "liability" in Section 5 must be expanded to include not only the liability to respond in damages for the injury, but perhaps twenty other liabilities to be sued for the same injury in twenty different courts in several different jurisdictions.

One of the reasons for this construction as set forth by Mr. Justice WOLFE, seems to me better reason for a different construction. As Belial said:

"I should be much for open war, if what was urged main cause did not dissuade me most."

It is argued that the term "liability" in Section 5 must have been intended to include the right to maintain a suit in a state court, because that right is granted by Section 6, and the opinion then points out that the Act originated and passed the House with Section 5 using the term "liability" as is, and thereafter Section 6 was amended on the Senate floor to prevent the regular removal clause from applying to an action under the act. It would seem therefore that when the word "liability" was written into Section 5 its use and connotation was not in the light which it contended is given it because of the present wording of Section 6.

A rather thorough study of the general law in reference to venue contracts reveals that there is ample and good authority to the effect that the contract here involved should not be enforced.

The great weight of authority holds that contracts which limit the place where or the courts in which an action may be brought are unenforceable as against public policy. See Annotations as: L. R. A. 1916D, 696; 59 A. L. R. 1445; 107 A. L. R. 1060.

There are notable exceptions to this rule. See *Greve* v. *Ætna Livestock Ins. Co.*, 1894, 81 Hun. 28, 30 N. Y. S. 668; *Syracuse Plaster Co., Inc.* v. *Agostini Bros. Bldg. Corporation*, 1938, 169 Misc. 564, 7 N. Y. S. 2d 897; *Daley* v. *People's Building, Loan & Savings Ass'n*, 1901, 178 Mass. 13, 59 N. E., 452; *Mittenthal et al.* v. *Mascagni*, 1903, 183 Mass. 19, 66 N. E. 425, 60 L. R. A. 812, 97 Am. St. Rep. 404. Also there is a line of cases which do not follow the general rule if the venue contracts were made after the cause of action arose. See *Gitler et al.* v. *Russian Co. et al.*, 124 App. Div. 273, 108 N. Y. S. 793; *Detwiler* v. *Lowden*, 198 Minn. 185, 269 N. W. 367, 838, 107 A. L. R. 1054, 1059; *Clark* v. *Lowden et al.*, 48 F. Supp. 261; *Herrington* v. *Thompson, et al.*, (June 1945) 61 F. Supp. 903. The distinction between venue contracts made before and after the cause of action arose is mentioned in 17 C. J. S., Contracts, § 229, p. 605 and § 1725, Williston on Contracts, Revised Edition, Vol. 6. Each

of the text authorities cites only *Detwiler* v. *Lowden,* supra, as authority for the distinction.

The reason ofttimes given by the courts which do not enforce venue contracts is that they are attempts to oust the courts of jurisdiction which ouster is contrary to public policy. This is the same reason usually given for holding contracts to arbitrate are unenforceable. It has been suggested that this rule originated in early history when judges were dependent on fees for their livelihood as they had no fixed salaries. It was therefore to their personal interest to prevent the ouster of their jurisdiction. See authorities cited and discussed in Mr. Justice Wolfe's concurring opinion in *Latter* v. *Holsum Bread Co.,* 108 Utah 364, 160 P. 2d 421.

The selfish motives of judges may have accounted for some of the very early decisions holding venue contracts unenforceable but cannot account for the decisions made after the income of judges was in no wise dependent on fees received from the cases. It is probable the real underlying reason for holding some venue contracts "contrary to public policy" has been the tendency of courts to protect a party to a contract who, when the contract was made, was on a lower level of advantage than was the other party. A great number of the cases deal with insurance contracts. Courts for generations have recognized the disparity between the insured and the insurance company and have used various devices to equalize their position by protecting the insured from those clauses in the contract which he probably did not know were there or of which he did not realize the legal significance.

It is very probable that many of the decisions refusing to enforce contracts holding venue clauses are the natural result of courts trying to protect a party less able to guard his own interests when he contracts with a party who occupies a distinctly advantageous position. Examples of such contracts are those made between insurance companies and ordinary individuals and those made between huge corporations which have competent legal staffs and its employees. Especially would this solicitude of the law for

disadvantaged persons be manifest when the contract was between an employee who was by the injury made less adequate to attend to his interests and a fully competent employer.

Cases which hold venue contracts not against public policy and therefore enforceable usually involve contracts the parties to which were at the time of making same on about equal footing and the contract under all the circumstances was obviously reasonable. An excellent example is *Mittenthal* v. *Mascagni,* supra. The parties to the contract were both domiciliaries of Italy. The contract provided for a concert tour through several other countries, including the United States. The parties agreed that any disputes arising under the contract would be settled in the courts of Italy. Under the circumstances of the parties in that case the venue clause was obviously reasonable and for the advantage of all concerned, and the contracting parties were on the same level of advantage when they made the contract.

The courts in those cases which distinguish between venue contracts made before the cause of action arose and those made after and enforce the latter also in nearly ever case look to the circumstances of the parties and the terms of the contract. While the decisions were not made to turn on that point, yet the court saw fit to consider the reasonableness of the contracts in *Detwiler* v. *Lowden,* supra; *Herrington* v. *Thompson,* supra; *Roland* v. *Atchison, Topeka & Santa Fe Ry. Co.,* D. C., April 1946, 65 F. Supp. 630; and *Clark* v. *Lowden,* supra.

While many courts have consciously differentiated between provisions in contracts made before as distinguished from after the cause of action arose, when the whole field is surveyed it appears that the courts in differentiating them were enfluenced rather by the relative level of advantage of the parties to the contract and the reasonableness of the venue contract under the circumstances.

The writer does not see any sound reasons, based upon the time element alone, for enforcing one class and not the other. However most courts agree that venue contracts

which are made between parties widely different in their levels of vantage and which unreasonably restrict a party in his choice of the court in which he may sue or be sued should not be enforced.

This reasoning is apparently in conflict with that of the courts in several of our sister states and some of the lower federal courts. See the *Detwiler* cases, *Clark*, *Herrington* and *Roland* cases, supra. However, in each of these cases the contract merely restricted the employee to the courts, both state and federal, in the state where he was injured or where he was a resident at the time of the injury. Such contracts are not nearly so restrictive as the one in the case at bar. The reasonableness of the contracts involved in those cases may have materially influenced the reasoning and decisions therein.

The agreement involved in this action invites some analysis. It is a peculiarly worded instrument. It begins by asknowledging the receipt of $500.00
"as an advance to me on account of personal injuries."

This would seem to imply an acknowledgment of liability, but the amount thereof undetermined. The instrument then reads:

"such payment not to be an admission of liability and to be deducted from any final settlement, which might be made."

How could it be an *advance* on account and yet not *admission of liability?* Note also that in the agreement set out in haec verba by Mr. Justice WOLFE there is a comma just before the word *such* with which our last quote begins, and no further punctuation until the comma after *settlement* as shown in our quote. This suggests that the words

"* * *, such payment *not* to be an admission of liability and to be deducted from any final settlement, * * *"

is to be treated as one thought and clause. (Italics added.) Does the word *not* apply both to the "admission of liability" and to the "deduction from final settlement?" To illustrate the thought, does it mean "such payment not to be an

admission of liability and [not] to be deducted from any final settlement," or should it be read, "such payment not being an admission of liability [but is] to be deducted from any final settlement?" Is not the first one the proper construction, especially since the next paragraph in the agreement says that the consideration for the payment is the limitations imposed by the agreement?

Now note the peculiar wording in the second paragraph of the agreement:

"It is agreed that as consideration for such payment, * * *, suit for damages which I fully understand, might in the absence of this agreement, be brought in jurisdictions other than those herein set forth, will not be brought in any jurisdiction outside of the District Court of the United States, Northern Division."

Of course the comma after the word *understand* should properly have been placed after the word *might*. Note, it speaks of being "brought in jurisdictions" and "not be brought in any jurisdiction." Certainly to the lay mind, *jurisdiction* is not synonymous with *court*. Normally it does not have the connotation in the law. Thus when we speak of "the law in this jurisdiction" we mean in this state,—or the territorial limits covered by the court. The provisions of the statute as to jurisdictions, (Section 6) of which the signer recites he was fully aware, says action may be brought in three federal jurisdictions, the district of plaintiff's residence, the district where the accident occurred, and any other district in which defendant does business. It also may be brought in a competent state court in three state jurisdictions: in the district of plaintiff's residence, or in the district where the accident occurred, or in any district in which defendant does business.

Now the agreement reads, "any jurisdiction *outside* of" (Italics mine). If the idea to be conveyed was to confine an action to a specific court, the normal and natural expression would be to use the word *except* instead of *outside*. The word *outside,* connotes space, territorial, geographic areas or boundaries. Only to a most etymological mind

would it suggest the meaning *except,* or *but.* The use of *jurisdiction* instead of *court,* and *outside* instead of *except* or *any other but,* suggest either an original meaning different from that now urged by defendant and taken by the trial court, or a very clever manipulation of words to conceal hidden meanings.

I think the agreement means that plaintiff agreed he would not bring a suit except within the federal district or jurisdiction where the accident occurred. If this be correct, plaintiff in bringing his action in the District Court of Weber County is within the terms of the agreement, and therefore the question of its validity need not be considered.

.Assuming however that the agreement should be construed as contended by defendant, I still agree that the judgment should be reversed. I reach this conclusion not upon the grounds assigned by Mr. Justice WOLFE, but upon the ground that such contracts are void as against public policy.

As to the policy in this state, the State Constitution, Art. 1, Sec. 11 declares:

"All courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, which shall be administered without denial or unnecessary delay; and no person shall be barred from prosecuting or defending before any tribunal in this State, by himself or counsel, any civil cause to which he is a party."

I recognize that this section is designed as a limitation on the legislature particularly, and also on the executive department, of the state and its branches and subsidiaries, to prevent them from closing the doors of the courts against any person who has a legal right which is enforceable in accordance with legal remedies. *Brown* v. *Wightman,* 47 Utah 31, 151 P. 366, L. R. A. 1916A, 1140. But at the same time it is a constitutional recognition that the right to apply to the courts for redress is a substantial right and not lightly to be denied, even by contract. It recognized and established this as the policy of the state. We had

occasion to take some note of this policy in *Bracken* v. *Dahle,* 68 Utah 486, 251 P. 16, 20. There it was sought to bar plaintiff from maintaining a suit because it was contended that by his contract he had waived that right. Therein we said:

"Whatever might have been the rule, had plaintiff expressly and unequivocally agreed that he would not sue the defendant * * * need not be determined here. Whether defendant is immune from suit in the present action depends upon a fair and reasonable interpretation of the language above quoted upon which appellant relies. * * *. It is going a long way to assume that plaintiff intentionally and deliberately waived the ordinary and usual remedy to which a party is entitled for the redress of a wrong. Such waiver should at least be expressed in the *most unequivocal terms.* If the language used is equivocal, it certainly ought not to be interpreted in favor of the party insisting upon the waiver. The right to apply to the courts for relief for the perpetration of a wrong is a substantial right. If there is any doubt as to the meaning of the language employed, the doubt should be resolved in favor of the party claiming the right." (Italics mine.)

Since the majority of court has arrived at their conclusions upon other grounds no useful purpose would be subserved by prolonging this opinion. I think the great weight of authority, as well as the indicated policy of the state, as shown by the constitution and the pronouncements of the court, are to the effect that this contract, if interpreted as the trial court interpreted it, should not be enforced.

It follows that I concur in reversing the judgment and in the order made.

PRATT, Justice, (in dissent).

The prevailing opinion rejects the following cases: *Clark* v. *Lowden et al.,* D. C., 48 F. Supp. 261; *Herrington* v. *Thompson et al.,* 61 F. Supp. 903; and *Roland* v. *Atchison, Topeka & Santa Fe Ry. Co.,* D. C., 65 F. Supp. 630. To me these cases recognize the true meaning of the word "liability" as being the monetary obligation imposed by law in

favor of the one litigant and upon the other. This meaning conforms to Webster's definition of the word. It is the liability in damages for injury or death. I can see, of course, a legitimate ground for rejecting such a contract as this if it were shown that the selected court was limited in its powers of awarding judgment. Under such circumstances it could be said that the employer had exempted itself from liability to the extent the employee's losses or damages exceeded the amount the court had power to award. This is not such a case. The act treats the two classes of courts as on a par, and their jurisdictions are not limited in the sense indicated. The Supreme Court case of *Duncan* v. *Thompson*, 315 U. S. 1, 62 S. Ct. 422, 86 L. Ed. 575, is not in point as it deals with a contract which deprived the employee of going to any court at all unless he could pay the $600.00 involved. If the employee was, or became, financially embarrassed the employer would suffer no liability at all—obviously a one-sided situation.

The employee has the privilege of making a selection of the court he wants. Nothing is said as to how he shall evidence that selection. There is nothing in the law that says he may not make his selection final or irrevocable. The privilege is his, and if he feels that it is to his advantage to use it in a certain way then why shouldn't he? If an advantage has been taken of him, it is not hard for him to say so—to plead and prove it.