499 P.2d 124

**C. G. HORMAN CO., a Utah corporation, Plaintiff and Appellant,**

v.

**Virgil J. LLOYD et ux., Defendants and Respondents.**

No. 12519.

Supreme Court of Utah.

June 29, 1972.

Tuckett, J., filed an opinion concurring in part and dissenting in part; Crockett, J., filed an opinion dissenting in part in which Ellett, J., concurred.

John G. Marshall, Salt Lake City, for plaintiff and appellant.

Herschel Bullen, of King, Craft & Bullen, Salt Lake City, for defendants and respondents.

HENRIOD, Justice:

Appeal from a judgment dismissing the complaint and awarding judgment on defendants' counterclaim for damages and attorney's fees. Affirmed in part and reversed in part. No costs awarded.

■ There was no transcript of the record designated, so we have before us only the pleadings, exhibits,[1] the Findings and Conclusions in Case No. 31379, Fourth District Court, and the court's Findings of Fact, Conclusions and Judgment in the instant case. Unless the Findings are in error and shown to be such by material, uncontroverted evidence, they are presumed to be correct.

We are of the opinion that most of the Findings reflect the facts accurately, but that some of them are not supported by the record, for reasons we shall relate.

The Findings pertinent to this decision may be summarized as follows: That in December, 1965, the parties executed a written contract having to do with the financing and construction of a motel. Horman agreed to aid and become obligated in the financing, for which he would obtain an interest in the facility as tenant in common with the defendants Lloyd. He jointly signed the mortgage note with Lloyds. Thereafter, Horman refused to participate in any further financing which was needed, unless acquiring an additional interest in the property and income. The Lloyds sought other avenues to obtain funds. In a subsequent written contract (dated February 23, 1967) the parties agreed that if Horman desired to assert any further

claim in addition to what Lloyds had paid for Horman's interest, it could be done by suit in the district court if filed within a year, in which case the court could review the original December, 1965, contract, and in which event Lloyds could assert any claims and offsets against any claim arising out of failure of Horman further to help finance the project. Such suit was filed on the 364th day.[2] The evidence showed Horman was not entitled to any further amount under the December, 1965, contract but Lloyds were entitled to damages for the new mortgage commitment fee and also attorney's fees on their counterclaim, for the enforcement of an agreement incident to the further financing of the project, and that matters decided in a suit previously filed by the construction company against the Lloyds asserting a mechanic's lien, were not res judicata.

■ In addition to the Findings made above, the record shows unequivocally that in the lien case mentioned in footnote 2 (Case No. 31379, Fourth District Court), the court in that case found that on February 23, 1967, the parties signed a contract, as implemented by another contract dated March 23, 1967, and another dated April 24, 1967, in which they "compromised and settled and fully released all claims existing between themselves" and that by rea-

---

1. Including the contract and several modifications.

2. Where Horman was made a third-party defendant, and where claims against Horman were dismissed without prejudice.

son thereof the court dismissed the Third-Party Complaint without prejudice to Lloyds' right to state a defense or right of setoff against Horman in the instant case (31752) which was then pending. We believe this Finding was res judicata except as to defenses and offsets assertable by Lloyds in the instant case, in which the trial court used the language *"claims* and offsets," which it found not to be res judicata. Irrespective of whether "claims" might be synonymous with "defenses," it is undisputed that the parties agreed in the contract of February 23, 1967, after providing that Horman could file a suit within one year to determine rights under the December, 1965, agreement, that "Both parties agree to abide by the decision of the District Court and no appeal will be taken to the Supreme Court." That agreement refers to the instant case (31752), and we believe and hold that irrespective of the Finding as to "defenses and offsets" by the court in the mechanic's lien case, the agreement of the parties not to appeal is valid and should prevail, and we so hold.

3. 16 Utah 2d 223, 398 P.2d 873 (1965).

4. Bracken v. Dahle, 68 Utah 486, 489, 251 P. 16 (1926) ; Latter v. Holsum Bread Co., 108 Utah 364, 160 P.2d 421, 428 (1945) ; Hoste v. Dalton, 137 Mich. 522, 100 N.W. 750, 752 (1904) ; Brown v. Brown, 35 Ohio App. 182, 172 N.E. 416 (1930) ; United States Cons. Seeded Raisin Co. v. Chaddock, 173 F. 577 (9th Cir. 1909) cert. denied 215 U.S. 591, 30 S.Ct. 407, 54 L.Ed. 340 (1910) ; Harmina v. Shay, 101 N.J.Eq. 273, 137 A. 558

In holding as we do, we are not unmindful of our rather recent case of Barnhart v. Civil Service Emp. Ins. Co.,[3] which by a 3–2 decision struck down a compulsory arbitration agreement to arbitrate future disputes, found in an insurance policy as being against public policy on the grounds it ousted the courts of jurisdiction. That case is distinguishable from this one, where the parties did not agree to arbitration which might oust the court of jurisdiction, but on the contrary, agreed to *seek* the decision of the court. The only question, then, is whether, after having done so, they had agreed to waive their right of appeal, and, as a corollary, whether one by agreement cannot waive his right to appeal on the grounds of public policy. We believe and hold that the parties effectively did waive their right to appeal[4] and that such agreement should be binding on the parties.[5] Therefore we hold that the judgment on the counterclaim for $14,000 is affirmed. As to the judgment for $6,000 attorney's fees it is reversed.

■■ The record is barren of any evidence as to a reason for awarding attor-

(1927) ; Phelps v. Blome, 150 Neb. 547, 35 N.W.2d 93 (1948).

5. Lloyds point out that they filed a motion to dismiss in this court and that it was denied, apparently concluding that such denial was tantamount to an adjudication by us that the matter was appealable, which conclusion does not necessarily maintain, since frequently such motions are denied for a variety of reasons, not the least of which may be to preserve an issue for plenary treatment by brief and argument.

ney's fees, the reasonable value thereof, or any agreement in writing providing therefor. Such fees are not awardable as costs since there is no statutory sanction therefor. Horman never promised to pay such fees, either orally or in writing, and they were unrecoverable at common law, and hence the trial court had no basis for awarding such fees. Lloyds cite no authority to justify their award, and the parties' agreement to abide by the decision of the trial court only may extend to subject matter *over which it has jurisdiction,* but not as to subject matter about which the court has no authority whatever and about which the parties could have no judicially determinable dispute whatever under the facts of this case. We have enunciated this principle with respect to attorney's fees twice by unanimous court in Holland v. Brown [6] and Hawkins v. Perry,[7]—and one hardly can agree not to appeal an issue over which the court has no jurisdiction.

A few words must be said about Mr. Justice Crockett's dissent: It refers to Bracken v. Dahle apparently for the proposition that agreements to arbitrate are against public policy as ousting courts of their jurisdiction. I believe the case cannot be cited for such a general principle. *Under the facts there,* such result was reached, but the court clearly recognized that such an agreement might be enforce-able. The dissent lifts a quotation from Latter v. Holsum Bread for its proposition. The use of these two cases to justify the dissent's urgence rides awry when it is noted that the Bracken case is not pertinent, and the Latter case deals with arbitration of *future* disputes, which renders that case also impertinent here. In the instant case there was no arbitration agreement at all, but an agreement, in truth, *not* to arbitrate, and contrariwise consciously to present the matter to the court in the first instance, and not to evade it. Assuming that the agreement here *was* one for arbitration, there is nothing wrong with it since there was an *existing,*—not a future controversy here, which finds plenary sanction for legitimacy, free from the curse of being against public policy, in Title 78–31, Utah Code Annotated 1953, having to do with ARBITRATION of *existing* controversies, —which is the case here.

Only question here is not one of *arbitration,* but one of *waiver of appeal.* The dissent suggests that one may not waive his right to appeal—which cannot be accepted as a sound legal principle. Waiver of appeal is accomplished every day, as is waiver of a jury trial,—both constitutional rights about which the dissent seems earnestly to be concerned. Accused persons frequently waive both such constitutional rights, which parallels those cases where

6. 15 Utah 2d 422, 394 P.2d 77 (1964).

7. 123 Utah 16, 253 P.2d 372 (1953).

…

**116**

we have said that with respect to points raised on appeal for the first time in civil cases, the appellant has waived his right of review.

CALLISTER, C. J., concurs.

TUCKETT, Justice (concurring in part and dissenting in part):

I concur with the majority opinion upholding the right of the parties by agreement to waive their rights of appeal. It would seem to me that such agreement should be upheld on the grounds of public policy as encouraging litigants to accept the decisions of trial courts as being final.[1] However, after concluding that the agreement not to appeal is binding, the decree of the district court should be a final determination of the litigation and should not be disturbed.

CROCKETT, Justice (dissenting in part):

I dissent from holding that the plaintiffs have no right to appeal, but otherwise concur in the opinion, including the striking of the award of attorney's fees.

I confess that to me it presents a puzzling situation when parties seeking protection of their rights before this court make the contention that they have no right to

be here; and even more so, when this court agrees with that contention, but nevertheless proceeds to grant relief, which it has done here to the extent of $6,000. It must, of course, be recognized that the parties may enter into an agreement which *states* that they will not ask a court to enforce it. The perplexing problem arises if a dispute occurs and one of the parties refuses to abide by that covenant. How then can it be enforced?

The party relying upon the covenant must say to the other: "You have no right to ask the court for assistance, but I will ask its assistance to enforce against you this covenant which prevents you from seeking its protection." The logical consequence of the foregoing is this proposition: Under our system of insuring the peaceful and orderly settling of disputes by the processes of law, the only way in the ultimate that any covenant whatsoever, including one not to seek assistance from a court, can be enforced against one unwilling to abide by it is by a court, and the power that stands behind it.

This applies with equal force to the right to an appeal to seek redress from an improper judgment, as it does to having access to the court in the first instance, as set forth in the case of Barnhart v. Civil Service Emp. Ins. Co.[1] referred to in the

1. In addition to cases cited in the majority opinion, see also: Wyrzkowski v. Budds, 325 Mich. 199, 38 N.W.2d 313;

Speeth v. Fields, Ohio App., 47 Ohio L. Abst. 47, 71 N.E.2d 149.

main opinion. It is also shown in the case of Bracken v. Dahle.[2] The holding is as shown in its headnote 1, that a "Subcontractor stipulating to be bound by provision of main contract with the State, . . . held not to have waived right to apply to courts for redress . . .;" The decision in Latter v. Holsum Bread Co.[3] states:

It is almost the universal rule that in the absence of a statute to the contrary, *an agreement to arbitrate all future disputes* thereafter arising under the contract *does not constitute a bar to an action* on the contract involving such dispute, on the ground that it seeks to deny to the parties judicial remedies and therefore is contrary to public policy. [Citing a number of authorities.]

It is not to be doubted that *after a judgment has been rendered* by a court adjudicating the rights of the parties, so that each party knows what his rights and obligations are, they may then agree to abide thereby, and not to take an appeal. This is simply tantamount to settling the lawsuit at that point. If by mutual promises they agree to do so, they should be bound in the same manner as by any other contract; and if a party refused to abide, the matter could be taken to court for enforcement.

The real difficulty is confronted when, before the particular grievance has arisen, and the parties don't even know what it is, or is going to be, the agreement states they will not seek redress therefrom in court.

The right and some viable means of seeking redress of grievances is essential to a free and orderly society, which the judicial branch of our government and its courts were established to implement. It is provided in Art. I, Sec. 11, of the Utah Constitution:

*All courts shall be open,* and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, which shall be administered without denial or unnecessary delay; and *no person shall be barred from prosecuting or defending before any tribunal in this State,* by himself or counsel, any civil cause to which he is a party.

The right to appeal from a judgment which is imposed upon one which is deemed to be oppressive, unjust, or for any reason improper as not in conformity with the law, is also expressly spelled out in our constitutional and statutory law. Art. VIII, Sec. 9, Utah Constitution, provides that:

From all final judgments of the district courts, *there shall be a right of appeal* to the Supreme Court.

---

1. Footnote 3 of main opinion.

2. Footnote 4 of main opinion.

3. Footnote 4 of main opinion.

It is similarly declared in Rule 72, U.R.C. P. There are sound reasons why these fundamental rights, which are expressly assured by the law should not be taken away by private contract.

Where parties have agreed to abide by a decision of a court before they even know what it is, or will be, it is certainly within the realm of possibility that a court might render a judgment so totally incongruous to their rights, or the remedy sought, that it would be intolerable to either, or both of them, for that matter. There surely should be some safety valve to correct such a situation and this would be the right of appeal.

The instant case provides a very good illustration of the soundness of the rule advocated in this dissent. Under our law attorney's fees are never awarded except where provided for by statute or by contract.[4] The main opinion points out that there is no such basis for the award of the $6,000 attorney's fee against the plaintiff. If there were no right to redress on appeal, we could not correct the judgment and the plaintiff would have to pay that fee. Even though some expedient language is used which may seem to make it appear otherwise, these basic facts cannot be avoided or obscured: notwithstanding the covenant not to take an appeal, the plaintiffs have in fact taken an appeal, this court has considered it, and has granted relief to the extent of $6,000.

The problem under consideration can be brought into sharper focus by an exaggerated supposition. Suppose the trial court, instead of awarding a mere $6,000 attorney's fee, had extended it another decimal point and made it $60,000, or another decimal point and had made it $600,000, or any further number of decimal points one would care to imagine, and the judgment could not be corrected on appeal. Or suppose the district court had, upon some other unjustified basis, rendered judgment for some amount which was unconscionable or ever so outrageous, and that it refused to correct the error. It seems inescapable to conclude that in the processes of justice there should be some way to correct such a judgment. That is the purpose of the right to appeal and demonstrates the reason why it should not be denied.

For the reasons above set forth: that the covenant not to appeal is inimical to the spirit and purpose of our system of justice and is contrary to clearly expressed fundamental law, it is my opinion that this court should refuse to enforce it as being as against public policy, and then award the appropriate relief by striking the $6,000 attorney's fee, and otherwise affirming the judgment, as does the main opinion. This would avoid the paradox involved in say-

4. See cases cited in footnotes 6 and 7 of main opinion.

ing that the covenant not to appeal is valid and binding, and in the same decision granting relief on appeal.

(All emphasis mine.)

ELLETT, J., concurs in the opinion of CROCKETT, J.