Ex parte LAMACHIA.

(District Court, D. New Jersey.   May 3, 1918.)

1. ARMY AND NAVY ⬦⟾20—SELECTIVE SERVICE LAW—EXEMPTION—WAIVER BY ALIEN.

Selective Service Law May 18, 1917, c. 15, § 5, 40 Stat. 80, providing that "all male persons between the ages of 21 and 30, both inclusive, shall be subject to registration," applies not only to citizens but aliens whether of enemy or friendly nations and whether or not they have declared their intention to become citizens, and, while section 2 provides that the draft shall be based upon liability to military service of all male citizens or male persons not alien enemies who have declared their intention to become citizens, the right of a registered alien friend who has not so declared his intention to claim exemption thereunder may be waived, and where so waived, and he has been drafted and taken into the service, a court is without power to discharge him.

2. ARMY AND NAVY ⬦⟾20—SELECTIVE SERVICE LAW—"LIABILITY."

The word "liability" in Selective Service Law May 18, 1917, c. 15, § 2, 40 Stat. 77, providing that the draft "shall be based upon liability to military service," etc., is used in its ordinary sense of obligation or responsibility.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Liability.]

In the matter of the application of Savina Lamachia for writ of habeas corpus.  Writ discharged.

Henry H. Wittstein, of Trenton, N. J., for the writ.

Joseph L. Bodine, Asst. U. S. Atty., of Trenton, N. J., opposed.

RELLSTAB, District Judge.  It appears from the petition filed in the above matter, and not denied, that Savina Lamachia, a citizen of Italy, and resident of Trenton, N. J., 25 years of age, registered with the local board for division No. 1 in that city, in accordance with the provisions of the Selective Service Law approved May 18, 1917, and was given serial No. 2055 and order No. 329 by the local board.  He was first rejected as physically unfit for military service.  Subse-

quently, on January 2, 1918, he filed a questionnaire with the local board in pursuance of the Selective Service Regulations prescribed by the President, November 8, 1917, under the authority vested in him by the Selective Service Law.

In answering series VII of the questionnaire with respect to citizenship, Lamachia stated, in response to question 1, that he was not a citizen of the United States and, in response to question 2, that he did not claim exemption from military service on that ground. He then answered the nine remaining questions, which were to be answered only by those who claimed exemption from military service because they were not citizens.

Among other things, Lamachia alleged that he had answered question 2 under series VII in the negative for the reason that he had been advised and informed by several persons, including an unidentified member of the legal advisory board, that he would have to serve in the United States Army or be deported to serve in the Italian Army. However, it is not claimed that any member of the local board so advised him.

Lamachia was placed in class 1 by the local board, and on February 5, 1918, after a physical examination, was found qualified for military service. An application made to the local board for leave to file a new questionnaire was denied, and in due course of time he was inducted into the United States military service and stationed at Camp Dix, N. J. No appeal from the action of the local board was taken to the district board.

The suggestion that by answering questions numbered 3 to 11, inclusive, under series VII, registrant indicated either a lack of understanding of the meaning of question 2, or a desire not to be bound by his answer to that question, lacks force. An examination of these questions indicates that they call for merely a statement of the history of the registrant and that there was no need of answering them, if the claim for exemption, on the ground of noncitizenship, was waived. The answers to these subsequent questions suggest that neither he nor his advisor understood the purpose of such questions, but they do not indicate that registrant did not intend to be bound by his answers to the preceding questions.

[1] The contention that a nondeclarant alien is automatically excluded from military service under the Selective Service Act and that he cannot waive his exemption is not tenable.

The Selective Service Law (section 2) provides:

That the draft "shall be based upon liability to military service of all male citizens, or male persons not alien enemies, who have declared their intention to become citizens, between the ages of 21 and 30 years, both inclusive. * * *"

Section 5 provides:

"That all male persons between the ages of 21 and 30, both inclusive, shall be subject to registration. * * *"

Section 4 provides for the exemption from the selective service of certain officials of the government, ministers, and students of theology,

and persons in the military and naval service of the United States, and for the partial exemption or exclusion from military service of persons falling into certain other designated classes.

[2] It is argued that section 4 of the Selective Service Act designates those who were to be excluded or partially exempted from the draft, but that it did not exclude or exempt nondeclarant aliens; and that for this reason nondeclarant aliens were not subject to the provisions of the law, but were excluded because not mentioned in section 2. Such an argument overlooks the fact that the exemptions provided for in section 4 apply equally to the citizen and the nondeclarant alien. A nondeclarant alien, whether friend or foe, under the provisions of section 5 of the Selective Service Law, is required to register. United States ex rel. Max Pascher v. Kinkead et al. (D. C.) 248 Fed. 141 (opinion by Judge Haight, of this court, filed March 2, 1918), affirmed by the Circuit Court of Appeals on April 1, 1918, 250 Fed. 692. To say that a nondeclarant alien friend, who waives the exemption available to him under the Selective Service Law, cannot be kept in the military service if it subsequently appears that he is unwilling to perform military duty, calls for a meaning of the word "liability" not justified by the context or the purpose of that law. Liability is there used in its ordinary sense of obligation or responsibility. Basing the draft on such obligation does not necessarily exclude all not so obligated.

The congressional purpose was not to prevent either alien enemies, or alien friends who had not declared their intention to become citizens, from entering the military service under that act, but to prevent their being coerced into such service. To these classes was accorded a privilege not accorded to other males of the specified ages. From the moment such nondeclarant registers and waives his claim to exemption, he, like a declarant, is subject to the Selective Service Act and the rules and regulations of the military department. He cannot thereafter come into court and say, "I ought not to be held within the draft," any more than a citizen inducted into the army can come there and say, "I am tired of the army and I ought to be discharged." He was as much entitled to exemption for dependency or for any other reason set out in section 4 as an American citizen. But once inducted into the army, he has no greater rights than our own citizens. Whether he should be continued in the military service is a matter of policy to be determined only by the military authorities.

The writ is discharged.