First National Bank of East Islip, Respondent, *v.* National Surety Company, Appellant.

Insurance (fidelity) — limitation of time within which to present claim — when claim must be presented within six months following end of insured period.

A contract, called a fidelity bond, guaranteeing or indemnifying an employer against any breach of fidelity on the part of an employee is generally regarded as, and in the matter of interpretation is, a contract of insurance, and where the bond contains a clause that "Any claim against the surety hereunder must be presented to the surety within six months after the date of the termination of the Surety's liability hereunder for any reason," the termination of the liability of the surety sets the six months running. The presentation of the claim must be made while the duty and obligation of the surety to make good the losses, constituting the claim, exist, since the word " liability " in such clause means the condition of being exposed to the upspringing of an obligation to discharge or make good an undertaking of another or a loss or deficit; " the being exposed or subject to a given contingency, risk, or casualty, which is more or less probable." Hence, the insurer is not obligated to pay losses which were not claimed before the expiration of six months following the end of the insured period.

*First National Bank* v. *National Surety Co.*, 182 App. Div. 262, reversed.

(Argued February 26, 1920; decided April 20, 1920.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the second judicial department,

entered March 26, 1918, affirming a judgment in favor of plaintiff entered upon a verdict.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Carlisle Norwood* and *William J. Griffin* for appellant. The plaintiff's claim was not presented within six months after the date of the termination of the defendant's liability on the bond in suit and for that reason plaintiff was not entitled to judgment. (*Home Ins. Co.* v. *P., etc., Ry.*, 178 Ill. 64; *Inhabitants of Saco* v. *Osgood*, 5 Me. 237.) The word " liability " in the clause in question should be understood in its clear, ordinary and popular sense. (*Haywood* v. *Shreve*, 44 N. J. L. 94.)

*Oliver C. Carpenter, Charles P. Rogers* and *Charles H. Stoll* for respondent. A surety bond, in which there is any ambiguity or which is susceptible of two interpretations, must be construed strictly against the surety company and in favor of the insured and a clause in such a bond requiring claims to be presented within six months after " termination of liability " cannot be justly construed as meaning " termination of bond," for liability for accrued undiscovered acts does not terminate with the bond. (*Hay* v. *S. F. Ins. Co.*, 77 N. Y. 235; *Davis* v. *Copeland*, 67 N. Y. 127; *Am. Surety Co.* v. *Pauly*, 170 U. S. 133; *Am. Bonding Co.* v. *Spokane B. & L. Society*, 130 Fed. Rep. 737; *Steen* v. *N. F. Ins. Co.*, 89 N. Y. 315; *Steel* v. *P. Ins. Co.*, 51 Fed. Rep. 715; *N. Y. & P. R. S. S. Co.* v. *Ætna Ins. Co.*, 192 Fed. Rep. 212; *Preston* v. *Ætna Ins. Co.*, 193 N. Y. 142; *Schumacher* v. *G. E. C. & I. Co.*, 197 N. Y. 58; *Baley* v. *H. F. Ins. Co.*, 80 N. Y. 21.)

COLLIN, J. The action is upon a written instrument executed by the defendant, a domestic corporation, to the plaintiff which guaranteed the honesty of an employee of the latter. At the close of the evidence at the trial the

trial justice, denying, under exception, the motion of the defendant for a direction of a verdict in its favor, submitted the evidence to the jury which rendered a verdict in favor of plaintiff. The consequent judgment was affirmed by the non-unanimous decision of the Appellate Division.

The facts determinative of the question presented to us are uncontradicted. The instrument, under seal, was delivered November 21, 1912. In virtue of it the defendant agreed " to make good " to the plaintiff any loss not exceeding ten thousand dollars which the plaintiff might sustain by reason of specified dishonest acts of a named employee committed after the fifth day of February, 1912, and " before the termination of this bond," provided the plaintiff shall observe requirements prescribed, and immaterial to our consideration. It next provided: " The liability of the Surety hereunder shall immediately terminate as to subsequent acts of the Employee, (a) Upon discovery by the Employer of any default hereunder by the Employee; (b) The Employee leaving the services of the Employer; (c) Thirty (30) days after receipt by the Employer of written notice from the surety of its desire to terminate same. Upon the termination of this bond by discovery of default, the premium paid thereon shall be deemed fully earned." Next is an immaterial paragraph which is followed by: "Any claim against the Surety hereunder must be duly presented to the Surety within six (6) months after the date of the termination of the Surety's liability hereunder for any reason, and no action or proceeding shall be brought hereunder unless begun within two (2) years after the Employer shall have given notice of such claim." There is no other material provision. The insured period ended February 5, 1914, because the plaintiff did not provide for a further time by the payment of the premium. The employee committed prohibited acts of embezzlement between May 28, 1912, and December 23, 1913, which became first known

to the plaintiff December 28, 1915, and made known to
the defendant by the plaintiff January 6, 1916. May 10,
1916, the claim was presented to the defendant. The
defendant denied any liability on the ground that the
claim was not presented within the six months next
following the cancellation of the instrument. The action
was begun June 21, 1916. We are to determine whether
or not the claim of the plaintiff was presented to the
defendant within six months after the date of the termina-
tion of the defendant's liability under the instrument.

Although the instrument denominates itself a " bond,"
it is a contract or policy of insurance. (Insurance Law
[Cons. Laws, chapter 28], section 70, subdivision 4;
*People ex rel. National Surety Company* v. *Feitner*, 166
N. Y. 129.) A contract guaranteeing or indemnifying
an employer against any breach of fidelity on the part of
an employee is generally regarded as, and in the matter
of interpretation is, a contract of insurance. The plain-
tiff asserts that " the date of the termination of the
Surety's liability " under the contract was the date of
the termination of the period within which an action must
be commenced upon the contract, as prescribed in the
Statute of Limitations. The defendant asserts that such
date was that of the termination of the insured period.
Each party in brief and argument brings to our consider-
ation many judicial opinions relating to the rules of inter-
pretation deemed applicable to the case. If the language
of the contract, relevant to the question to be determined,
were of uncertain or doubtful meaning, the rules appli-
cable would not be far or difficult to seek. We are not
to interpret where there is not reasonable doubt concern-
ing what the parties really agreed upon. The language
before us in its clear and indisputable meaning excludes
the assertion of the plaintiff.

The language is: "Any claim against the Surety here-
under must be duly presented to the Surety within six
(6) months after the date of the termination of the

Surety's liability hereunder for any reason,   *   *   *."
The termination of the " liability " of the defendant sets
the six months running.   It is manifest that the presenta-
tion of the claim is to be made while the duty and obli-
gation of the defendant to make good the losses constitut-
ing the claim exist.   It would be idle and senseless for
the plaintiff to present the claim after the obligation of
the defendant to make it good had terminated.   In real
life parties do not enter into stipulations of such character.
Ordinary sense and understanding refuse to accept the
conclusion that the parties so agreed.   If the language
under consideration were: " Any claim against the surety
hereunder must be duly presented to the surety within
six months after the date of the termination of the surety's
obligation to make good the loss claimed hereunder for
any reason," the plaintiff obviously would not have a
right of action.   The plaintiff's action rests and must
rest in fact upon such language.   It asserts that the mean-
ing of the word " liability," as used, is the obligation of
the defendant, made fixed and absolute by the defalca-
tion of the employee, to make good to plaintiff the loss,
and that the plaintiff has six months after that obligation
is terminated, is ended, in which to present its claim.
Reason rejects the assertion, not in the way of inter-
preting language, but as a perversion of language.   To
say of the maker of a note that his liability thereon has
terminated must and can only mean that his obligation to
pay it has been in some way annulled and obliterated.
It could not be renewed or continued by an agreement
that the note should be presented to him by the payee
within six months after his obligation to pay it had been
annulled.   The word " liability " in the language under
consideration has, clearly and necessarily, its other mean-
ing, which it ordinarily and commonly has in instruments
and statutes of contingent obligation, namely, the con-
dition of being exposed to the upspringing of an obligation
to discharge or make good an undertaking of another or

a loss or deficit; " the being exposed or subject to a given contingency, risk, or casualty, which is more or less probable." (*State ex rel. Breeden* v. *Sheets*, 26 Utah, 105; *Cochran & Sayre* v. *United States*, 157 U. S. 286, 296; *Home Ins. Co. of N. Y.* v. *Peoria & Pekin Union Ry. Co.*, 178 Ill. 64.) Of such a nature is the liability of those who are in the relation of stockholders, trustees, sureties, guarantors, indorsers, insurers. Of such a nature, and of such a nature only, must have been the liability, the termination of which set running the six months beyond which the defendant could not with effect present claims. During the insured period, or within the term of the policy, the defendant was exposed to the inception of the obligation to make good any defalcation. At the end of that period, the exposure terminated, came to a limit in time, and the liability, which was that exposure, necessarily terminated. The end of that period was February 5, 1914. The defendant was not obligated to pay the losses which were not claimed before the expiration of the next following six months.

If argument in support of our conclusion were needed it is found in the universal character of policies of indemnity insurance, and in public policy. The writer of this opinion has examined the opinion in every adjudicated case, involving one of those policies, discoverable by him, and of the multitude found one which provided for the discovery of a loss or the presentation of any claim for a loss within one year next after the end of the insured term; four provided for the purpose a period of three months; the many others provided the period of six months. Those opinions accept those provisions as useful and salutary. In *Ballard County Bank's Assignee* v. *United States Fidelity & Guaranty Co.* (150 Ky. 236) the court said concerning them: " The effect of such a provision in a bond is helpful rather than hurtful. Knowing that no recovery can be had for losses not discovered within the time fixed by the bond, the bond itself is an incentive to

the officers of the bank to do their duty by making frequent and careful examinations of the accounts of its employees. Similar provisions to the one in question have been upheld by the courts, and it is well settled that where the liability of the insurer is limited to losses discovered within a specified time, there is no liability unless the fraud, dishonesty or negligence, causing the loss, not only occurred but was discovered within the time limit," and cited many cases. (See, also, *Ladies of Modern Maccabees* v. *Illinois Surety Co.*, 196 Mich. 27.) We do not believe that the national bank in this case thought or intended when it received the policy that it should have or required twenty and one-half years after the employee began to steal its funds in which to discover the theft.

The judgment should be reversed and the complaint dismissed, with costs in all the courts.

HOGAN, MCLAUGHLIN and ANDREWS, JJ., concur; HISCOCK, Ch. J., and POUND, J., dissent on opinion of PUTNAM, J., at Appellate Division; ELKUS, J., not voting.

Judgment reversed, etc.