## SHERMAN v. PERE MARQUETTE RY. CO.
### No. 45C1057.

District Court, N. D. Illinois, E. D.

Oct. 3, 1945.

Royal W. Irwin, of Chicago, Ill., for plaintiff.

Erwin W. Roemer and Gardner, Carton & Douglas, all of Chicago, Ill., for defendant.

BARNES, District Judge.

The defendant, Pere Marquette Railway Company, moved to dismiss this case on the ground that this court is not a court of proper venue by reason of the fact that the plaintiff, after the incurrence of the injuries alleged in the complaint, entered into valid agreements that any suit instituted because of his injuries would be brought in the Circuit Court for the County of Wayne, Michigan, or in the Federal Court at Detroit, Michigan. In its brief in support of the motion to dismiss, the defendant states the facts as follows:

"Plaintiff brings this action under the Federal Employers' Liability Act to recover damages, alleged at $100,000 for injuries sustained by him on August 11, 1944, in Wayne County, Michigan, while he was allegedly employed by the defendant.

\* \* \* \* \* \* \*

"The defendant is a Michigan corporation with its main office in Detroit. On August 11, 1944, plaintiff was in the general employ of the defendant in Wayne County, Michigan, although he was then actually employed by Union Belt of Detroit, an unincorporated association consisting of the Wabash, Pere Marquette, and Pennsylvania railroads, for which Union Belt acts as a switching agent in Wayne County (the question of whether Union Belt of Detroit, and not this defendant, was the plaintiff's employer under the Federal Employers' Liability Act at the time of his injury is not raised on this motion to dismiss). Plaintiff is a resident of Berkley, a suburb of Detroit located in Oakland County, which adjoins Wayne County.

"After plaintiff's injury Union Belt of Detroit paid him at his request the sum of $200 per month for the period of nine months from September, 1944, through May, 1945. At the time of receiving each payment plaintiff signed an agreement acknowledging receipt of the $200. \* \* \* the agreement signed May 1, 1945, and typical of all those involved, was as follows (italics added):

" 'Received of the Union Belt of Detroit the sum of ($200.00) Two Hundred and 00/100 Dollars advanced to me at my request and as provisional aid to me, pending determination whether or not there is any liability on the part of said Union Belt of Detroit in respect of personal injuries or otherwise, arising out of an accident occurring on or about the eleventh (11th) day of August, 1944, at or near Detroit, Michigan, when I was injured while employed as a switchman by the Pere Marquette Railway Company and while in the service of the Union Belt of Detroit, and in respect of which injuries I have made claim against said Union Belt of Detroit, the validity of which has not been determined or admitted by it. In the event that I am awarded any amount by said Union Belt of Detroit by way of settlement or compromise, or by a Court or other tribunal by judgment or award, the above amount shall be credited against said settlement, compromise, judgment, or award. Neither said advance or payment, nor this receipt is or shall be deemed or construed as an admission of liability by said Union Belt of Detroit.

592

"'In the event that I shall institute suit because of my injuries, I agree that any such suit will be brought in the Circuit Court for the County of Wayne, Michigan, or in the Federal Court at Detroit, Michigan. I have read the above and understand same.'

"* * * It will be necessary for the defendant to have in attendance at the trial of the case to testify as witnesses at least eight railroad employees (including a fireman, engineer, conductor, switchman, etc.) and at least three other persons, all of whom are residents of Wayne County, Michigan. It will be necessary for these witnesses to be transported to Chicago, a distance of some 300 miles from Detroit, and the railroad employees mentioned will necessarily be kept out of service for a period of approximately one week. Plaintiff could have instituted this suit in the Circuit Court for the County of Wayne or in the United States District Court at Detroit, where all the witnesses reside and the accident occurred. The federal and Michigan Courts mentioned are courts of competent jurisdiction and would furnish plaintiff with a fair and speedy trial without the necessity of travel and hotel accommodations for the witnesses and with only minor interruptions of their work. A trial in Chicago will create an unreasonable burden upon the defendant, both in the performance of its duties as a common carrier and as an essential war industry, because of the shortage of man-power and travel accommodations and facilities. * * * The Union Belt of Detroit in performing industrial switching serves some 400 industries, about half of which have been engaged in war production. It is not only difficult but impossible for Union Belt to obtain sufficient operating personnel to take adequate care of current needs, with many employees working two shifts and others working considerable overtime. The removal of operating personnel from the service of Union Belt to act as witnesses at the trial of this case in Chicago would interfere with the operations of, and would be a distinct handicap and hardship to, the Union Belt of Detroit in its service to vital industries. * * * The affidavit of F. A. Young, general passenger agent of the defendant, sets forth the well known facts about the tremendous burden imposed on the railroads by the war effort with particular reference to providing equipment and manpower necessary to furnish passenger travel. The affidavit states, for example, that the defendant's passenger revenues alone have increased more than 400% since 1939, while at the same time there has been a reduction in the coach and sleeping car equipment available for the handling of passenger business."

It seems to the court that the only questions which will require consideration are: (1) Is the contract to bring suit in the Circuit Court for the County of Wayne, Michigan, or in the Federal Court at Detroit, Michigan, valid in view of Sections 5 and 6 of the Federal Employers' Liability Act, 45 U.S.C.A. §§ 55, 56, and (2), assuming that the contract is valid, can the defendant, Pere Marquette Railway Company, take advantage of it?

■ Sections 5 and 6 of the Federal Employers' Liability Act are as follows:

Section 5: "Any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter, shall to that extent be void."

Section 6: "Under this chapter an action may be brought in a district court of the United States, in the district of the residence of the defendant, or in which the cause of action arose, or in which the defendant shall be doing business at the time of commencing such action."

Section 6 was enacted in 1910 and after the enactment of Section 5 in 1908. Section 5 refers to "any liability *created by this chapter*," and Section 6 says that "*under this chapter* an action may be brought," etc. The court is of the opinion that the mere fact that Section 6 was enacted after Section 5 does not prevent Section 5 from applying to "any liability" created by Section 6.

■ The Federal Employers' Liability Act creates certain rights in employees of common carriers by railroad while engaged in interstate commerce. Some of those rights are substantive and some are adjective. The act also imposes certain duties or liabilities on such common carriers, and some of those duties or liabilities are substantive and some of them are adjective. One of the rights which the act granted to employees of common carriers by railroad while engaged in interstate commerce was the right to bring an action for a violation of the act "in the district * * * in which the defendant shall be doing business at the time of commencing such action." One of the duties or liabili-

ties imposed on common carriers by a railroad while engaging in interstate commerce was the duty or liability of submitting to suits for a violation of the act "in the district * * * in which the defendant shall be doing business at the time of commencing such action." This right and this corelative duty or liability are of course an adjective right and an adjective duty or liability. It cannot be denied that the contracts in question in this case have the purpose or intent to enable the common carrier to exempt itself from the liability to submit to suit for a violation of the Federal Employers' Liability Act "in the district * * * in which [it] shall be doing business at the time of commencing such action." The narrow question is then, are such contracts denounced by Section 5 of the Federal Employers' Liability Act? The act, including Sections 5 and 6, is remedial. The Supreme Court of the United States in Baltimore & Ohio R. Co. v. Kepner, 314 U.S. 44, at page 53, 62 S.Ct. 6, at page 10, 86 L.Ed. 28, 136 A.L.R. 1222 says:

"The privilege was granted because the general venue provisions worked injustices to employees."

Section 5 is, and was by Congress intended to be, a very broad provision. The Supreme Court of the United States in Duncan v. Thompson, 315 U.S. 1, at page 6, 62 S.Ct. 422, at page 424, 86 L.Ed. 575, said:

"And the adoption of Section 5 of the present act without adding any of the other limitations which some of the state statutes had embodied argues persuasively that Congress wanted Section 5 to have the full effect that its comprehensive phraseology implies."

The comprehensive phraseology of Section 5 certainly includes within its meaning a contract the purpose or intent of which is to enable the common carrier to exempt itself from liability to suit for a violation of the act "in the district * * * in which the defendant shall be doing business at the time of commencing such action." The beneficial effects of the statute should not be whittled away by the courts by distinguishing between adjective and substantive rights and adjective and substantive duties or liabilities. Adjective rights and their corelative duties or liabilities are frequently as important as substantive rights, and substantive rights and their corelative duties or liabilities are of little value without adjective rights and their corelative duties or liabilities whereby the substantive rights may be enforced. It has been said that the word "liability" in Section 5 is limited to the liability of the carrier to respond in damages, but when we say that we beg the real question, which is as to the meaning of the word "liability" in Section 5. It is said that venue is a privilege that may be waived, and that the case of Neirbo Co. v. Bethlehem Corp., 308 U.S. 165, 60 S.Ct. 153, 84 L.Ed. 167, 128 A.L.R. 1437, lends support to this view. Generally speaking, venue is a privilege which may be waived, but it may not be contracted away in the face of a specific statute which prohibits such contracting, as does Section 5 of the Employers' Liability Act under consideration.

■ The court is of the opinion that the contracts in question in this suit are void because they are prohibited by Section 5 of the Federal Employers' Liability Act.

The court's attention has been called to the decisions in Clark v. Lowden, D.C., 48 F.Supp. 261, Herrington v. Thompson, 61 F.Supp. 903, filed in the Western District of Missouri, Detwiler v. Lowden, 198 Minn. 185, 269 N.W. 367, 838, 107 A.L.R. 1054, and Peterson v. N. Y. Central R. Co., a decision without opinion by one of the judges of this court. These four decisions do support the contentions of the defendant and are worthy of great respect, but this court finds itself unable to follow them.

■ Coming now to the second question before the court. The defendant says that the question is one of intent of the parties as to whether the defendant should have the benefit of the contracts in question. Assuming that that is the question before the court, the court cannot say, from a consideration of the contracts in question and the affidavits which have been filed by the defendant and which are abstracted in its statement of the facts hereinabove set forth, that the contracts in question were made for the benefit of the defendant. On the contrary, the court is of the opinion that the contracts in question on their faces show that they were made for the sole benefit of the Union Belt of Detroit and not for the benefit of the defendant, and that the affidavits do not alter this conclusion.

For the foregoing reasons, the motion to dismiss will be overruled and denied and the defendant will be ruled to plead within twenty (20) days.