PORTER v. FLEMING et al.

Civ. No. 1304.

District Court, D. Minnesota, Third Division.
Sept. 22, 1947.

William A. Tautges, of Minneapolis, Minn., for plaintiff.

Philip Stringer, of St. Paul, Minn., for defendants.

BELL, District Judge.

This is a suit under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., to recover damages for personal injuries. At the time it was commenced, the defendant was doing business in Minnesota, Texas and other states. The plaintiff was a resident of Texas and the accident occurred therein.

The plaintiff on October 25, 1946, and for many years prior thereto was employed by the defendant as a refrigerator car inspector and at the time of the accident was engaged in the inspection of cars at Dalhart, Texas. He was on top of a freight car and in a stooped position when the defendant without warning suddenly and violently moved said car as a result of which he was thrown to and upon the ground and severely injured.

The defendant alleges in Paragraph IV of its Answer that the plaintiff entered into a contract with the defendant not to bring suit in any state except the one in which the injuries were sustained. The plaintiff in his reply alleged that he was induced to sign said contract by the misrepresentation, fraud, deceit and concealment of the defendant, its agent and employee.

The defendant moved for a separate trial of the issues presented by Paragraph IV of the Answer and the Reply of the plaintiff. The motion was sustained and the court ordered a separate trial of said issues, and a determination thereof in advance of a trial of the cause of action alleged in the complaint.

 The issues under the above mentioned order of the court were tried, briefs thereafter filed, and the case submitted accordingly. The question here is not whether the above mentioned contract is contrary to the Federal Employers' Liability Act or to public policy and therefore is void. These questions have been determined by another judge of this court. Neither are we concerned with forum non conveniens as it has been settled that the plaintiff's choice of a forum cannot be defeated by that doctrine in cases brought under the Federal Employers' Liability Act. Baltimore & Ohio R. Co. v. Kepner, 314 U.S. 44, 62 S.Ct. 6, 86 L.Ed. 28, 136 A. L.R. 1222; Miles v. Illinois Central R. Co., 315 U.S. 698, 62 S.Ct. 827, 86 L.Ed. 1129, 146 A.L.R. 1104; Gulf Oil Company v. Gilbert, 330 U.S. 501, 67 S.Ct. 839.

The question presented here is whether the contract involved, Exhibit "B",[1] was

---

[1] Exhibit "B" Form 1564 A

"The Chicago, Rock Island and Pacific Railway Company
Joseph B. Fleming and Aaron Colnon, Trustees

FILE NO. 46-15411 Panhandle Division

Agreement for Advancement of Funds Prior to Determination of Liability

At my request the Trustees of the Estate of The Chicago, Rock Island and Pacific Railway Company have this day advanced to me the sum of $200.00 ................. for living and other expenses while I am disabled for work by personal injuries sustained by me on or about the 25th day of October, 1946.

In consideration of said advancement, I agree with the Trustees of the Estate of the said Railway Company that I will endeavor, in good faith, to adjust and settle any claim I may have for my injuries without resorting to litigation. If my claim cannot be so adjusted, I promise and agree that I will not start suit against the Trustees or the Railway Company to recover damages for my injuries in any courts except those sitting within the State where

obtained from plaintiff by fraud and this court therefore will limit the scope of its investigation to that question.

A check, Exhibit "C", was given in payment of the consideration designated in the contract.[2]

On the whole there appears little controversy about the facts pertaining to the accident. The plaintiff in the nighttime of October 25, 1946, ascended to the top of a box car to inspect the refrigeration and was stooping to examine the ice compartment when the string of cars, without notice as alleged, was moved suddenly thus causing the plaintiff to fall to the ground. He promptly was taken to the hospital at Dalhart, Texas. He was unconscious, had a severe laceration on the top of his head and a broken femur. He received attention at Dalhart till November 3 when he was moved by the defendant a distance of approximately 400 miles to

my injuries were sustained or within the State where I resided at the time my injuries were sustained, and I covenant with the Trustees, and their successors, that I will not start suit against them or said Railway Company for damages on account of my said injuries in any courts sitting outside the State of my residence at the time of the said injuries or outside of the State wherein my said injuries occurred.

I furthermore promise and agree in consideration of the advancement aforesaid that all sums of money now or hereafter advanced to me by the Trustees shall be deducted from any sum which finally may be determined, either by settlement, judgment of a court or otherwise, that I am entitled to receive from the Trustees or said Railway Company on account of said injuries.

It is understood and agreed that the advancement of this or any other sum of money to me shall not be considered as an admission of any liability on the part of the Trustees or the Railway Company and I understand that the Trustees, and the Railway Company, deny liability for my injuries.

Dated at Fort Worth, Tex. this 13th day of November , 1946.

I have read & understand terms of this advancement.

 D B Porter

Witness
Mrs. D. B. Porter Voucher
D. W. McHugh No. 513017–46

Paid by draft No. 134874 drawn by D. W. McHugh, Claim Agent,
 Fort Worth, Texas.

| No. Clms. | Date Mo. | Yr. | Ent. No. | Document Number | Acct. Div. | Sub. Div. | s t a t e | Oper. Div. | Acct. No. Prim. Sub. | C l a s s | Debit Amount | Credit Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Dc 1 | 11 | 46 | 45 | .34 | 06 | 14 | 23 | | 420 013 | 1 2 L O M | $200.00– | |
| | Correct | | | | | | | | | | | |
| | D. W. McHugh | | | | | | | | | | | |
| | | Claim Agent" | | | | | | | | | | |

[2] Exhibit "C"

"Form 1631–A. 150 BKS, 6–45
 The Chicago, Rock Island & Pacific Railway Co.
 Joseph B. Fleming and Aaron Colnon, Trustees
 Fort Worth, Texas, Nov. 13, 1946 No. 134874

Pay To The Order Of D. B. Porter ......................................

Two hundred ............................................... Dollars $200.00 ....................

 advancement in accordance with terms of agreement
For form 1564 A, dated Nov. 13, 1946, due to injury sustained at or near Dalhart, Texas, on or about October 25, 1946 while a refrigerator inspector. 46–15411.

To Carl Nyquist, Treasurer,
Trustees, The. C. R. I. & P. Ry. Co. D. W. McHugh
 Chicago, Ill. Claim Agent."
 Endorsement on back of check "D. B. Porter."

a hospital at Fort Worth, Texas. On November 6, 1946, he was given an anaesthetic and an operation was performed to reduce the fracture of the femur. He was discharged from the hospital November 23, 1946. He asserts that he has been unable to perform labor since the accident.

There is a sharp conflict in the evidence pertaining to the mental condition of the plaintiff from the date of the accident to November 17. The plaintiff states that his mind was "in a fog" till about noon November 17 when it cleared; that his "mind was a blank" from the time of the accident on October 25 till November 17. He testified that he does not remember of being in the hospital at Dalhart or of being moved to Fort Worth; that he does not remember of seeing defendant's claim agent, D. W. McHugh, who called to see him at the hospital November 5 and 13, or of expressing to him a need of money or of seeing or signing Exhibits B and C; and that in fact he did not know he was injured till the change in his mental condition developed on November 17.

The claim agent testified that he called at the hospital to see the plaintiff on November 5, and told him that the defendant would supply him with funds if needed during the period he was unable to work; that he returned on November 13 and that the defendant signed Exhibit B whereupon the check, Exhibit C, was delivered; that the plaintiff wrote at his direction on Exhibit B "I have read and understand the terms of this advancement." The claim agent further testified that the mental condition of the plaintiff appeared to be normal; that Mrs. Porter, the wife of the plaintiff, was present in the room at the hospital, also Mr. and Mrs. Hester.

Mrs. Porter testified that no request was made for money as they had from $1,200 to $1,500 in the bank and a home clear of encumbrances; that McHugh came to the hospital and voluntarily offered to supply them with funds; that he gave her the check for $200 and said that the paper her husband signed (Exhibit B) was a receipt for the money; that she did not read the paper but relied on what McHugh said; that "plaintiff was not right mentally" when he signed Exhibit B; that she wrote plaintiff's name on the back of the check and later cashed it at her bank in Dalhart and that nothing was said by McHugh about the plaintiff being able to sue only in the state of Texas.

The Hesters testified that the mind of the plaintiff when he was brought to the hospital at Fort Worth appeared to be defective but that it later cleared. Their testimony in that connection is of slight value because of their lack of knowledge of when the clearing of plaintiff's mind took place. They did not hear the claim agent tell the plaintiff at the time he signed Exhibit B that he could sue only in the state of Texas.

The plaintiff is just a working man typical of those generally in the railroad service. He is inexperienced in business, unlearned in the law and unfamiliar with legal documents and court procedure. He taught a country school one year in early life, but has been a common laborer in the service of the defendant for over 26 years.

McHugh is a lawyer and has been a claim agent for the defendant for many years. He knew the effect of Exhibit B, why it was desired by the defendant, and he went to the hospital to secure the plaintiff's signature to it, not just to give the plaintiff $200. Even if the plaintiff possessed his accustomed mental state, he was a sorry match for the representative of the defendant with whom he dealt at the time Exhibit B was executed. Doubtless the plaintiff believed, if he thought anything about it, that, as he was dealing with a representative of his employer for more than a quarter of a century, he could rely on him as a friend and as an advisor.

Exhibit B, of course, was of substantial importance in this case to the defendant. Possibly it is proper to call it an "Agreement for Advancement of Funds" but obviously its real purpose was to limit the plaintiff in bringing suit for damages to the state of Texas. It was to obtain a defense to a suit in any other jurisdiction exactly as the one here presented. The claim agent never saw the plaintiff till November 5 when he called to lay the groundwork for securing Exhibit B. He

saw the plaintiff again on November 13 when the deal was consummated and never saw him again till this case was called for trial. He paid the $200 but was not thereafter concerned about the welfare of the plaintiff. The payment was to sustain the bargain he made. Exhibit B provides for a deduction of the advancement from any settlement made.

While there is no intention of reversing, changing or modifying the ruling heretofore made in this case, the purpose and character of the contract, and its scope and effect on the parties, may be considered in connection with its execution. The Federal Employers' Liability Act very explicitly prescribes the jurisdiction in which suits under it may be brought. If Congress went further in the Act than was intended, or if for any reason a change had been desirable, there has been more than a third of a century to make it, and yet, the jurisdictional provision remains undisturbed. To evade this provision the defendant saw fit to employ a claim agent learned in the law to wait on an inexperienced workman in his hospital room, while in a cast and within a week after a serious operation, to secure his signature which was for the benefit of the defendant and not of the plaintiff.

The Act provides:

"Section 5: Any contract, rule or regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter, shall to that extent be void."

"Section 6: Under this chapter an action may be brought in a district court of the United States, in the district of the residence of the defendant, or in which the cause of action arose, or in which the defendant shall be doing business at the time of commencing such action."

Courts have differed widely in their view of such contracts as Exhibit B. Similar contracts have been sustained. Clark v. Lowden et al., D.C., 48 F.Supp. 261; Detwiler v. Chicago, R. I. & P. R. Co., D.C., 15 F.Supp. 541; Herrington v. Thompson, D. C., 61 F.Supp. 903; Roland v. Atchison, Topeka, & Santa Fe Ry. Co., D. C., 65 F.Supp. 630; Detwiler v. Lowden, 198 Minn. 185, 269 N.W. 367, 370, 838, 107 A.L.R. 1054, 1059. See 166 A.L.R. 652 Note.

In the Detwiler case last cited the Supreme Court of Minnesota held: "* * * The contract concerns an existing cause of action, and certainly the covenant to sue only in the courts sitting in the state where the cause of action arose and where plaintiff then resided is reasonable. We regard the covenant legal on its face, and it should be enforced, if plaintiff knowingly without fraud on the part of defendants signed and delivered the contract containing the covenant."

Other courts have taken a very different view. Sherman v. Pere Marquette Ry. Co., D.C., 62 F.Supp. 590; Fleming et al. v. Husted, D.C., 68 F.Supp. 900; Petersen v. Ogden Union Ry. & Depot Co., Utah, 175 P.2d 744, 746.

The Supreme Court of Utah in the Petersen case said: "It is apparent that Congress by the use of the very broad terms of Section 5 intended to protect fully the rights given employees by the Chapter. The section says 'any' device whatsoever the purpose or intent of which shall be to enable the carrier to exempt itself from 'any' liability created by the chapter shall to that extent be void. The Supreme Court of the United States in Duncan v. Thompson, Jan. 1942, 315 U.S. 1, 62 S.Ct. 422, 86 L.Ed. 575, held the section applied to contracts made after the cause of action arose as well as those made before. Regardless of the intention of the parties, if the practical effect of the contract or device is to exempt the carrier from any liability imposed by the chapter, the contract or device is void. Philadelphia, B. & W. R. Co. v. Schubert, 224 U.S. 603, 32 S.Ct. 589, 56 L.Ed. 911; McAdow v. Kansas City Western R. Co., 100 Kan. 309, 164 P. 177, L.R.A.1917E, 539; Larson v. Lewis-Simas-Jones Co., 29 Cal.App.2d 83, 84 P.2d 296."

The Court of Civil Appeals of Texas in Bull Dog Auto Fire Ins. Ass'n v. Brown, 287 S.W. 76, held a stipulation limiting jurisdiction void as against public policy. The court quoted the Supreme Court of

that state (International Travelers' Ass'n v. Branum, 109 Tex. 543, 212 S.W. 630, 632,) in which it was said: "It is utterly against public policy to permit bargaining in this state about depriving courts of jurisdiction, expressly conferred by statute, over particular causes of action and defenses."

In Volume 2, Section 558, Restatement of the Law of Contracts, it is said: "A bargain to forego a privilege, that otherwise would exist, to litigate in a Federal Court rather than in a State Court, or in a State Court rather than in a Federal Court, or otherwise to limit unreasonably the tribunal to which resort may be had for the enforcement of a possible future right of action or the time within which a possible future claim may be asserted is illegal."

■■ The facts and circumstances surrounding the execution of a contract limiting rights and benefits existing under the law should have careful examination when the validity of the contract is called into question. The conduct of a lawyer representing a railroad company in his dealing with a company employe who is confined to a company hospital pending litigation or the settlement of a claim for personal injuries affecting such employe should be scrutinized with care and caution, especially is this true when an employe has executed a contract at the instance of the company which limits rights and privileges allowed by law; and, if it appears that any undue advantage has been taken of the employe, the contract should be cancelled and set aside, and the parties restored to their preexisting rights under the law. The transcendant purpose of Exhibit B is to deprive the plaintiff from doing precisely what the Federal Employers' Liability Act provides he may do.

■ It is my opinion that the plaintiff did not know the purpose and effect of Exhibit B at the time he signed it; that his signature was obtained without an explanation by the claim agent of the provision relating to jurisdiction; that the plaintiff signed it believing that it was a receipt for money and therefore was overreached, deceived and defrauded; that Exhibit B is void and should be set aside; that Paragraph IV of the defendant's Answer should be stricken and the case tried on the issues otherwise presented by the pleadings in the case. Findings of Fact, Conclusions of Law and an Order for Judgment will be made accordingly.