## KRENGER v. PENNSYLVANIA R. CO.
### No. 161, Docket 21211.

United States Court of Appeals
Second Circuit.
April 14, 1949.
On Rehearing May 25, 1949.

SWAN, Circuit Judge, dissenting.

---

John Vance Hewitt, of New York City (Conboy, Hewitt, O'Brien & Boardman and John C. Early, all of New York City, on the brief), for defendant-appellant.

William Samuels, of Brooklyn, N. Y. (William A. Blank, of Brooklyn, N. Y., and Morris S. Borden, of Cleveland, Ohio, on the brief), for plaintiff-appellee.

Before L. HAND, Chief Judge, and SWAN and CLARK, Circuit Judges.

CLARK, Circuit Judge.

Plaintiff, an employee of the defendant railroad company residing in Ohio, has secured a verdict and judgment against the company for $28,750 for an accident occurring in Ohio. The defense urged on this appeal is that of improper venue, based upon plaintiff's agreement, made after the accident, to institute no action for the injuries in question except in a court sitting within either the state where the injuries were sustained or the state where the plaintiff was then living. This defense was stricken before trial on motion of the plaintiff, 8 F.R.D. 65. The appeal therefore presents an issue which has quite divided the courts, the latest decisions being Akerly v. New York Cent. R. Co., 6 Cir., 168 F.2d 812, rejecting the contract, and Grand Trunk Western R. Co. v. Boyd, 321 Mich. 693, 33 N.W.2d 120, petition for certiorari pending, supporting it.[1]

The accident on which the action was based took place on March 10, 1946, in the Akron, Ohio, yards of the railroad. It resulted in personal injuries to plaintiff, who was then engaged in his duties as a yard conductor, though concededly in interstate commerce. Two months after the accident, plaintiff signed the agreement in issue,[2] in return for an advance of $250 for living or other expenses. Thereafter the defendant made further advances, subject to like conditions, to a total of $1,750. The venue provisions of the Federal Employers' Liability Act, § 6, 45 U.S.C.A. § 56, provide that the employee may sue either "in the district of the residence of the defendant,

---

[1] The division of authority is well stated by Judge Allen thus: "The case authority on this question is in sharp conflict. District Courts in Missouri, Illinois, and Minnesota, and the Supreme Court of Minnesota, have held that such contracts are valid. Herrington v. Thompson, D.C., 61 F.Supp. 903; Roland v. Atchison, Topeka & Santa Fe R. Co., D.C.Ill., 65 F.Supp. 630; Clark v. Lowden, D.C.Minn., 48 F.Supp. 261; Detwiler v. Lowden, 198 Minn. 185, 269 N.W. 367, 838, 107 A.L.R. 1054, 1059. District Courts in Illinois, Minnesota, and Iowa, and the Supreme Court of Utah, have held that such contracts are invalid. Sherman v. Pere Marquette Ry. Co., D. C., 62 F.Supp. 590; Fleming v. Husted, D.C.Iowa, 68 F.Supp. 900; Petersen v. Ogden Union Railway & Depot Co., 110 Utah 573, 175 P.2d 744. Cf. Porter v. Fleming, D.C.Minn., 74 F.Supp. 378. In the latter case the contract was very similar to the one herein involved. With due respect for the courts first named, we think that the latter cases state the sounder rule, and that under the clear intendment of the Act this contract is void." Akerly v. New York Cent. R. Co., 6 Cir., 168 F.2d 812, 814, Miller, J., dissenting.

[2] The agreement is quite similar to those set forth in Porter v. Fleming, D.C.Minn., 74 F.Supp. 378, 379, 380—

dismissed per stipulation, Fleming v. Porter, 8 Cir., 166 F.2d 141—and Akerly v. New York Cent. R. Co., 6 Cir., 168 F.2d 812, 813. It is headed, "Agreement for Advancement of Funds Prior to Determination of Liability." After reciting the advance of $250 for "living and other expenses" for the personal injuries sustained because of the described accident, it continues:

"In consideration of said advancement, I agree with said The Pennsylvania Railroad Company that I will endeavor in good faith to adjust and settle any claim I may have for my aforesaid injuries before resorting to litigation. If my claim be not so adjusted, I covenant and agree that I will not start or prosecute suit against said The Pennsylvania Railroad Company, to recover damages for my injuries in any court except one of those sitting within the State where my injuries were sustained or within the State where I resided at the time my injuries were sustained, provided service can be obtained on said The Pennsylvania Railroad Company in either of said States."

Further provisions state that the advancement shall be retained if no legal action is instituted, but shall be credited against any recovery if had and shall not constitute an admission of any liability on the part of the railroad. The agreement was signed and sealed by Krenger at Orville, Ohio, May 10, 1946.

or in which the cause of action arose, or in which the defendant shall be doing business at the time of commencing such action." Hence the contract here, while assuming to give the plaintiff an additional place of suit, namely, his residence, Ohio—though this was also the state of accident—actually denied him the right to sue in all other jurisdictions where defendant was doing business. If it is valid, it thus effectually prevents action in the court below.

We are met at the outset with the claim that the agreement in question is a valid compromise of plaintiff's claim for damages, and is therefore a complete bar to his action. Callen v. Pennsylvania R. Co., 332 U.S. 625, 68 S.Ct. 296. But in Duncan v. Thompson, 315 U.S. 1, 7, 62 S.Ct. 422, 424, 86 L.Ed. 575, that contention was rejected as to an advance made after the accident in consideration of an agreement not to sue until the advance was repaid. There the Court said: "While the agreement does contemplate the possibility of future settlement, it expressly stated that the $600 was advanced 'for living and other expenses pending further developments as to the extent and effect of * * * injuries and negotiations for settlement of [the] claim.'" And in the agreement at issue here, appellee promises to try to settle his claim before resorting to litigation, thereby requiring the conclusion that the $250 he received, specifically referred to as an "advancement," was not contemplated by the parties to be in settlement of his claim. The provision that he could keep the advance if he did not sue does satisfy the requirement of consideration for the contract, thus meeting the alternate ground upon which Akerly v. New York Cent. R. Co., supra, was put, against Judge Miller's dissent. We must therefore determine its validity as an independent contract to waive a procedural advantage afforded by the Federal Employers' Liability Act.

Defendant claims that we can resolve the issue on the plain language of the Act itself, which provides in § 5, 45 U.S.C.A. § 55: "Any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter, shall to that extent be void." Duncan v. Thompson, supra, has established that contracts made after the injury are within the scope of § 5; and it specifically voided the condition precedent to suit of returning the money advanced. We agree with the majority view in Akerly v. New York Cent. R. Co., supra, that the sweeping language of the Act, its legislative history, and the interpretation of the provision thus made—all support the plaintiff's contention.

Significance should be attached to the inclusive nature of the statutory phrase—*"any* liability *created by this chapter."* Had a restricted meaning been intended, it would surely have been simple, indeed, to limit the statutory provision to the duty *to pay damages.* That could have been done by this precise, though natural, phrase, or indeed by descriptions used in other parts of the Act, such as the "right of action" of § 59 or even the "cause of action" of § 56. On the other hand, it is difficult to think what liability under this chapter, and beyond the main grant of § 1, could have been intended if this was not, or what more apt expression to cover it, together with all other duties, liabilities, and disabilities created by the Act, could have been chosen. The importance of this extensive choice of venue to injured railroad workers is no secret; it was fully set forth by Senator Borah in sponsoring the amendment of 1910 which granted the choice—a bit of legislative history recently recounted at length in decisions re-enforcing the option against suggested judicial limitation. Baltimore & O. R. Co. v. Kepner, 314 U.S. 44, 62 S.Ct. 6, 86 L.Ed. 28, 136 A.L.R. 1222; Miles v. Illinois Cent. R. Co., 315 U.S. 698, 62 S.Ct. 827, 86 L.Ed. 1129, 146 A.L.R. 1104. Of course if we cut through dialectic to reality—a la Mr. Justice Jackson in the latter case, 315 U.S. 698, at pages 705–708, 62 S.Ct. 827, 86 L.Ed. 1129, 146 A.L.R. 1104—we know that its greatest importance is because of its hoped-for consequence upon the amount of recovery through suit in a district where juries are generous. But we need not resort to an operation so drastic. For the views of cases and scholars—not to speak of the preferred dictionary definition relied on by

Judge Allen in the Akerly case, supra—are quite ample to sustain this meaning of "liability," even apart from the special setting of the statutory phrase in its immediate context. Under the analysis of Professor Hohfeld, adopted by the American Law Institute, *liability* is quite differentiated from a mere duty to pay damages and serves as the correlative of *power* and the opposite of *immunity* or exemption. Thus the railroad was contracting against its liability to be sued, i. e., to have its legal relations changed—adversely—in any one of several jurisdictions, in order to obtain immunity from such change except under the favoring conditions of a single chosen jurisdiction. Hohfeld, Fundamental Legal Conceptions 8, 50, 58–60, 1923, citing and quoting judicial usage; Corbin, Legal Analysis and Terminology, 29 Yale L.J. 163, 169, 170; 1 Restatement, Property § 3, comment a and Special Note, 1936.

Of course we should not press this overfar; in fact we need hardly have gone beyond the statutory background itself had not the judges sustaining these particular contracts relied, without other than an ipse dixit, upon some inherent circumscribed meaning necessarily to be attributed to the phrase.[3] Once this is effectively challenged —indeed, once the compulsion thought to inhere in the word itself is dissipated— there is nothing left to restrict the broad sweep of the statute. And, indeed, any possibility that the statutory phrase could be limited to the duty to pay damages only would seem already foreclosed by Duncan v. Thompson, supra. That case,

it will be recalled, held invalid an agreement requiring the repayment of sums advanced as a *condition precedent* to the bringing of action. If the statutory phrase applies to a condition requiring fulfillment *before* an action may be brought, it would seem just as applicable to a condition as to the *place where* action must be brought.

I conclude that under the statute the contract relied on as a defense is invalid. I add a brief word as to the concurring opinion of my Brother HAND lest our apparent differences in approach unduly overshadow our considerable accord. Except that I do not understand the basis for the assumed-to-be-accepted single meaning of *liability* (even against the apotheosis of a different meaning by our learned masters of the Law Institute), or the distinction asserted for Duncan v. Thompson, supra, I do not strongly contest his analysis, at least so far as it draws additional sustenance from common-law sources. Thus I accept the view that these are contracts of a kind generally to be viewed critically unless they are to be taken as parts of a fair compromise between the parties. 6 Williston on Contracts § 1725, Rev.Ed.1938; 2 Restatement, Contracts § 558, 1932. But as these authorities show, invalidity is much more general and more easily demonstrated as to contracts made before a cause of action has occurred and specific rights have accrued than as to one concerning a particular right of action. Here in actuality we are thrown back to this particular legislation to discover why—quite properly, as we both agree—this contract should nevertheless fall within the interdiction of the

---

[3] Thus in the now leading Boyd case, supra [321 Mich. 693, 33 N.W.2d 123], the court criticizes the assumed view of "'liability' as meaning 'venue'"—an obviously incomplete, if not wholly erroneous, premise, quotes from an inapposite Maine case and refers generally to 25 Words and Phrases, Perm. Ed., page 39, adds citations of the cases on this issue, note 1 supra, in the ratio of 6 to 4 in favor of its view (the Akerly case, Akerly v. New York Cent. R. Co., D.C. N.D.Ohio, 73 F.Supp. 903, not then having been reversed), and then proceeds to decision on the basis of "the common meaning of 'liability'" as "an obligation to pay a debt or amount," without other supporting authority or any note of Dun-

can v. Thompson, supra. To like effect are Larson, C.J., concurring, and Pratt, J., dissenting, in Petersen v. Ogden Union Railway & Depot Co., 110 Utah 573, 175 P.2d 744. But the general collection of cases cited actually demonstrates that this variable legalism cannot be so narrowly confined; thus witness the cases digested in the subsection entitled "Responsibility Synonymous," 25 Words and Phrases, Perm. Ed., supra at page 56. And see, e.g., Mayfield v. First Nat. Bank of Chattanooga, Tenn., 6 Cir., 137 F.2d 1013, 1019; Ex parte Lamachia, D.C. N.J., 250 F. 814, 816; First Nat. Bank v. National Surety Co., 228 N.Y. 469, 473, 474, 127 N.E. 479; 53 C.J.S., Liability, page 16.

law. As my brother's opinion shows, the fact of the prohibition embodied in § 5 looms large in his result, notwithstanding its earlier repudiation by him. It does seem that I am placing somewhat more weight upon that prohibition than he, though how much I am not sure; at least, without it I should find our conclusion rather doubtful, while perhaps he would not. But to measure this difference in emphasis between us would be difficult and, I suggest, not too important, since the statutory prohibition is actually there to aid both of us to arrive by our several courses at the same end.

Judgment affirmed.

L. HAND, Chief Judge (concurring).

There has been a spate of decisions as to whether, after he has been injured, an employee may make a valid contract which limits the choice of forums allowed him by § 6. Some of these have held such contracts valid; some have held them invalid under § 5; in one it was suggested that they were invalid because of the hostility which courts have always felt towards contracts which forbad resort to any courts to which the law gave access. My Brother CLARK has said all that can be said regarding these; and, obviously, the situation is one where only the Supreme Court can speak with finality. I agree with him in result, but for other reasons.

The term, "liability," in colloquial speech has indeed no certain boundaries; but in law, unless the context otherwise demands, it means a duty to another enforceable by sanctions; and to "exempt" one from "liability" means to relieve him of the duty, in whole or in part, which in the case at bar would mean the payment of damages. That is the scope of § 5; to extend it to a surrender of any one of the procedural incidents by which the sanctions are imposed, has no warrant in the language chosen by Congress, or in its apparent purpose. As I shall try to show, such contracts ought not indeed to be enforced, unless the employee is adequately protected;

but when he is, section 5 does not invalidate them. Duncan v. Thompson [1] gives no support to a contrary view. Disregarding the second point decided—that the contract lacked consideration—the contract did "exempt," and wholly "exempt," the road from "liability"; for, as matters stood, it had relieved the road from any compulsion to pay damages. It is true that the employee had it within his power to revive the "liability" by repaying the advance, but that is irrelevant; section 5 does not permit such a release whether absolute or conditional. To surrender access to some of the forums to which section 6 gives the employee resort, does not in the least relieve the road of its duty or of any sanctions for its performance, unless the forum which remains open is not competent to assess the damages and enforce the judgment; and the forum left open in the case at bar was altogether competent for both purposes.

On the other hand, be the original reasons good or bad, courts have for long looked with strong disfavor upon contracts by which a party surrenders resort to any forum which was lawfully open to him. Since such contracts are almost always made before any claim has arisen, there are few decisions which have considered whether that feature is important: that is, whether the doctrine covers contracts made after a claim arises. There are three decisions which make the distinction,[2] but in a fourth case one of the judges thought it irrelevant.[3] On such a showing I feel free to decide the point as res integra. In point of principle, I can see no basis for such a distinction. There is of course force in what my brother Swan says: that a man, who has a choice of where to sue upon an existing claim, ought to be allowed to make an irrevocable choice before he actually sues; but is there any greater reason why he should not be able to make the same choice before the claim has arisen? Whatever the grounds for denying him the privilege in the second case, seem to me to deny it in the first.

[1] 315 U.S. 1, 62 S.Ct. 422, 86 L.Ed. 575.

[2] Detwiler v. Lowden, 198 Minn. 185, 269 N.W. 367, 838, 107 A.L.R. 1054, 1059. Miller, J., dissenting in Akerly v. New York Cent. R. Co., 6 Cir., 168 F.2d 812;

Gitler v. Russian Company for Sea, River & Land Ins., 124 App.Div. 273, 108 N.Y.S. 793.

[3] Petersen v. Ogden Union Railway & Depot Co., 110 Utah 573, 175 P.2d 744.

In truth, I do not believe that, today at least, there is an absolute taboo against such contracts at all; in the words of the Restatement,[4] they are invalid only when unreasonable; and Mittenthal v. Mascagni,[5] is a notable instance in which a contract in futuro was held "reasonable." What remains of the doctrine is apparently no more than a general hostility, which can be overcome, but which nevertheless does persist.

The Federal Employers' Liability Act bears evidence that in the eyes of Congress employees do not bargain in all respects as equals with the roads. It relieves them of the defense of assumption of risk; § 6 gives them a larger choice of forums than at that time was open to other plaintiffs; and § 5 impairs some of their contracts. I do not forget in Callen v. Pennsylvania R. Co.,[6] the court held that an employee was not in so unequal a bargaining position that—in the absence of some positive provision of law—he could not settle his claim in full; and if he may do that, it would seem at first blush that he may surrender one of the privileges by which the claim is protected. Yet the differences seem to me critical. Although the employee is ordinarily not qualified to estimate his chances of success in a suit against the road, it is desirable that he shall be able to collect his claims without suit. On the other hand in contracts like that at bar the payment not only does not settle the claim, but it has no relation to any value at which the employee may appraise it, not even after he has discounted it by the hazards of a suit. It is no more than a temporary relief of his immediate necessities, which must be credited upon any recovery or settlement. Moreover, he is at a much greater disadvantage in estimating the effect of the contract upon his rights, than when he settles the claim. He is likely to suppose that one court is like another; and certainly he cannot be deemed to be acquainted with those differences between them which may in fact vitally affect his recovery.

For the foregoing reasons, I think that, although § 5 does not bar such contracts, three considerations conspire to take them outside what was decided in Callen v. Pennsylvania R. Co., supra: (1) they are contracts of a kind at which courts have always looked askance; (2) they concern a matter as to which—in some respects at any rate—Congress has shown that it considered the employee to bargain at a disadvantage; (3) that disadvantage is in this instance especially marked and is without any corresponding benefit. I would hold such contracts unenforceable unless the road shows that the employee was fully advised of their effect upon his rights. I need not say what advice is necessary for in the case at bar the road proved nothing on the subject.

SWAN, Circuit Judge (dissenting).

I should prefer to withhold decision to await action by the Supreme Court in Grand Trunk Western R. Co. v. Boyd, 321 Mich. 693, 33 N.W.2d 120, petition for certiorari pending. But as my Brothers wish to decide the case without delay I will state briefly my position. I agree with Judge HAND'S interpretation of section 5 but I disagree with his view that the contract restricting venue is invalid. At some time after the cause of action has accrued the plaintiff must elect the venue of his suit. Why he may not make such election by a contract fairly made with the defendant I am unable to see. Such a contract, like any other, may be impeached for fraud or mutual mistake, but unless so impeached it should be respected. Since a release of plaintiff's right to damages is valid unless impeached, Callen v. Pennsylvania R. Co., 332 U.S. 625, 630, 68 S.Ct. 296, a fortiori a release of a mere venue privilege should be good, absent any charge of fraud or mistake in obtaining it.

On Petition for Rehearing.

L. HAND, Chief Judge.

Upon petition for rehearing the defendant asserts that it has been deprived of any

---

[4] Restatement of Contracts, § 558.
[5] 183 Mass. 19, 66 N.E. 425, 60 L.R.A. 812, 97 Am.St.Rep. 404.

[6] 332 U.S. 625, 68 S.Ct. 296.

opportunity to present the evidence which I held to be necessary to make the contract valid. This position is not pertinent to the grounds of the decision of either of my brothers, and they do not feel called upon to answer it; I hold that it is not well taken. The defendant in its answer set up as a defence the plaintiff's contract not to sue outside the State of Ohio, to which the plaintiff, by order of the court, filed a reply, which alleged that, when he executed "the instrument of May 10, 1946," the defendant "fraudulently represented to him" that it would pay him $2000 in eight installments, if he would execute eight "'advancement of funds' instruments"; that "the said instruments referred to were made and executed by the plaintiff under such circumstances that the execution was not the voluntary act of the plaintiff"; and that "by reason of all of the foregoing the said agreement * * * and all the eight instruments constituting said transaction are rendered void." The defendant moved to have the validity of its defence that the contract was a bar decided in advance of the trial, and this was granted. When the issue came on before a judge, the plaintiff moved to strike out the defence and the defendant put in evidence the contract, but nothing more. The judge thereupon struck out the defence.

As I said in my concurring opinion, I think that the contract was invalid unless the defendant affirmatively proved that it was executed after "the employee was fully advised of its "effect upon his rights." It was part of the defendant's case therefore, when the plaintiff moved to strike out its defence, to prove these facts, and it did not even attempt to do so. The reply was not necessary at all, and it must be confessed that it is not clear. Yet, vague as it was, it alleged that the "instruments" were not the "voluntary act" of the plaintiff, and by "instruments" it apparently included the contract. That would seem to have advised the defendant that the "circumstances" surrounding its "execution" made it invalid. Moreover, the defendant does not even now allege what alone would satisfy me: i. e., that the plaintiff had had the advice of someone who adequately informed him of the effect of the contract upon his rights. Certainly that person must be someone not in the defendant's employ; and, indeed, I am inclined to say that he must be a lawyer, though I should not wish to make that an inflexible condition.

For these reasons I think that the petition should be denied, and my brother Clark joins in this disposition of it, though, of course, only for those reasons which he has already stated in his opinion.